[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 498.]

ABM Farms, Inc. *v.* Woods et al., Appellees; Maust et al., Appellants.

[Cite as *ABM Farms, Inc. v. Woods*, 1998-Ohio-612.]

*Arbitration—Enforcing arbitration agreement—Requirement to defeat motion for stay brought pursuant to R.C. 2711.02.*

To defeat a motion for stay brought pursuant to R.C. 2711.02, a party must demonstrate that the arbitration provision itself in the contract at issue, and not merely the contract in general, was fraudulently induced.

(No. 96-1803—Submitted October 22, 1997 at the Muskingum County Session—Decided April 29, 1998.)

Appeal from the Court of Appeals for Fairfield County, No. 95 CA 50.

————————————

{¶ 1} On April 8, 1994, appellee Judith A. Woods signed a one-page form entitled "Customer Securities Account Transfer Cash/Margin Instruction" ("Transfer Form"), authorizing the transfer of her securities account from The Ohio Company to appellant Advest, Inc. ("Advest"). On that same day, she signed a brokerage account acceptance form ("Acceptance Form") that created a brokerage account with Advest. She signed both in the presence of appellant Allan B. Maust, a broker employed by Advest. The following language appears on the Acceptance Form in bold type directly above Woods's signature:

"By signing below I also acknowledge that:

"* * *

"(b) I have received, read and understand the terms and conditions of the Account Agreement set forth in the accompanying booklet.

"(c) In accordance with the pre-dispute arbitration clause in Section 15 of the Brokerage Agreement on page 7, *I am agreeing in advance to arbitrate any controversies which may arise with you*." (Emphasis added.)

**{¶ 2}** The Account Agreement, which Woods did not review prior to signing the Acceptance Form, provides for arbitration as follows:

"15. Arbitration. You understand that:

"Arbitration is final and binding on the parties.

"The parties are waiving their right to seek remedies in court, including the right to jury trial.

"* * *

"You agree that all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of the Account Agreement or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration."

**{¶ 3}** On January 13, 1995, Woods and her husband, James L. Woods, filed a third-party complaint against Advest and Maust alleging, *inter alia*, fraud, breach of broker's duty, and intentional infliction of emotional distress. On February 13, 1995, Advest filed a motion pursuant to R.C. 2711.02 to dismiss appellees' third-party complaint and/or stay the proceedings pending arbitration between the parties. On March 9, 1995, Maust likewise filed a motion pursuant to R.C. 2711.02 to dismiss or stay litigation pending arbitration.

**{¶ 4}** On July 19, 1995, the trial court held an evidentiary hearing to address the motions to stay the proceedings. During that hearing, the court heard testimony from Woods. Woods acknowledged that she signed the Acceptance Form. However, she stated that she did not read the form because she relied on her belief in Maust's integrity. Woods testified that she was told by Maust that the sole reason for her needing to sign the agreement was to indicate her choice not to have a margin account. She further testified that Maust never mentioned the existence of an arbitration agreement on the Acceptance Form. Although the Acceptance Form refers to the Account Agreement, appellee Woods testified that she never received

a copy of the Account Agreement booklet describing the terms of the arbitration agreement.

{¶ 5} The trial court denied appellants' motions, holding that Woods had been fraudulently induced to sign the Acceptance Form containing the arbitration agreement. On July 21, 1995, appellants Advest and Maust orally requested the trial court to reconsider its denial of the motion to dismiss and/or stay the proceedings. On July 24, the trial court denied the motion to reconsider. Appellants appealed the decision to the Court of Appeals for Fairfield County. On June 17, 1996, the court of appeals affirmed the decision of the trial court.

{¶ 6} The cause is now before this court upon the allowance of a discretionary appeal.

—————————

*James R. Kingsley*, for appellees Judith A. and James L. Woods.

*Emens, Kegler, Brown, Hill & Ritter Co., L.P.A.*, *William J. Brown, Michael J. Galeano* and *Robert G. Schuler*, for appellant Allan B. Maust.

*Carlile, Patchen & Murphy*, *Denis J. Murphy* and *Dennis J. Concilla*, for appellant Advest, Inc.

—————————

**PFEIFER, J.**

{¶ 7} Ohio and federal courts encourage arbitration to settle disputes. *Kelm v. Kelm* (1993), 68 Ohio St.3d 26, 27, 623 N.E.2d 39, 40; *Southland Corp. v. Keating* (1984), 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1, 12. Our General Assembly also favors arbitration. R.C. 2711.02 requires a court to stay an action if the issue involved falls under an arbitration agreement, and under R.C. 2711.03, a party to an arbitration agreement may seek an order directing the other party to proceed to arbitration. Likewise, the brokerage industry prefers arbitration. Arbitration has become a fact of life for virtually everyone who enters into a brokerage agreement.

{¶ 8} Today, all these forces collide with an admittedly unsophisticated farmer who wants her day in court. The issue before us is whether a claim that a contract containing an arbitration clause was induced by fraud can defeat a motion to compel arbitration made pursuant to R.C. 2711.02. We find that proof of fraud in the inducement of the arbitration provision itself does defeat a motion to compel arbitration. In this case, however, there was no such fraud in the inducement.

{¶ 9} In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.* (1967), 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270, in interpreting the federal Arbitration Act of 1925, Section 1 *et seq*., Title 9, U.S.Code, the court addressed the issue of whether a claim of fraudulent inducement of a contract should be addressed through arbitration or in a trial court. The contract at issue in that case contained a broad arbitration clause:

"Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in the City of New York, in accordance with the rules then obtaining of the American Arbitration Association." *Id.* at 398, 87 S.Ct. at 1803, 18 L.Ed.2d at 1274.

{¶ 10} In *Prima Paint*, the district court had held that a charge of fraud in the inducement of a contract containing an arbitration clause so broad was a question for arbitrators and not for the court, and thus granted a stay of the action pending arbitration. The Supreme Court agreed that under Section 4, Title 9, U.S.Code, which is virtually identical to the relevant portion of R.C. 2711.03, the federal courts are not permitted to consider claims of fraud in the inducement of the contract generally. However, the court also held that Section 4 allows a federal court to consider issues relating to the making and performance of the agreement to arbitrate contained within the contract. *Id.* at 403-404, 87 S.Ct. at 1806, 18 L.Ed.2d at 1277. Thus, in the federal area, "[a] claim that the contract containing the arbitration clause was induced by fraud does not defeat a motion to compel arbitration unless the claimant can demonstrate specifically that the arbitration

clause itself was fraudulently induced." *In re Mgt. Recruiters Internatl., Inc.* (N.D.Ohio 1991), 765 F.Supp. 419, 420.

{¶ 11} R.C. Chapter 2711 mirrors the federal jurisprudence in its acknowledgment of the severability of the arbitration clause from the remainder of the contract. R.C. 2711.03 clearly provides that only when the making of the arbitration clause is itself at issue may the trial court proceed to try the action:

"The court shall hear the parties [upon the issue of whether the case should proceed to arbitration], and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the agreement. If the making of the arbitration agreement or the failure to perform it is in issue, the court shall proceed summarily to the trial thereof."

{¶ 12} R.C. 2711.01 more generally acknowledges that an arbitration clause is, in effect, a contract within a contract, subject to revocation on its own merits:

"(A) A provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract * * * shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract."

{¶ 13} R.C. 2711.01(A) refers to the arbitration *provision* in a contract, and notes that *it* is valid unless revocable under contract law. Because the arbitration clause is a separate entity, it only follows that an alleged failure of the contract in which it is contained does not affect the provision itself. It remains as the vehicle by which the legitimacy of the remainder of the contract is decided.

{¶ 14} Therefore, we find that to defeat a motion for stay brought pursuant to R.C. 2711.02, a party must demonstrate that the arbitration provision itself in the contract at issue, and not merely the contract in general, was fraudulently induced. *Krafcik v. USA Energy Consultants, Inc.* (1995), 107 Ohio App.3d 59, 63, 667 N.E.2d 1027, 1029.

**{¶ 15}** The trial court in this case did use the proper standard to determine whether a stay should apply, framing the issue as whether the arbitration clause itself was fraudulently induced. However, we find that the trial judge erred in finding for Woods.

**{¶ 16}** A claim of fraud in the inducement arises when a party is induced to enter into an agreement through fraud or misrepresentation. "The fraud relates not to the nature or purport of the [contract], but to the facts inducing its execution * * *." *Haller v. Borror Corp.* (1990), 50 Ohio St.3d 10, 14, 552 N.E.2d 207, 210. In order to prove fraud in the inducement, a plaintiff must prove that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied upon that misrepresentation to her detriment. *Beer v. Griffith* (1980), 61 Ohio St.2d 119, 123, 15 O.O.3d 157, 160, 399 N.E.2d 1227, 1231.

**{¶ 17}** There was no evidence presented to the trial court that Maust discussed arbitration at all with Woods, much less that he made a misrepresentation about it. Woods herself testified that arbitration was "[n]ever brought up, ever."

Woods signed two documents in establishing her relationship with Advest. The first, a one-page document, authorized the transfer of Woods's security account from The Ohio Company to Advest. The second, and the one at issue, was another one-page document, which set forth the basics of the relationship between Advest and Woods. (See Appendix.) The document was divided into two sections: clients who did not want a margin account signed the top portion, while those who wanted a margin account signed the bottom half. The top portion, which Woods signed, consists of a three-sentence paragraph, followed by three acknowledgments:

"By signing below, I also acknowledge that:

"(a) Interest on debit balances will be charged and compounded in accordance with the Account Agreement.

6

"(b) I have received, read and understand the terms and conditions of the Account Agreement set forth in the accompanying booklet.

"(c) In accordance with the pre-dispute arbitration clause in Section 15 of the Brokerage Agreement on page 7, I am agreeing in advance to arbitrate any controversies which may arise with you."

{¶ 18} According to Woods, Maust told her that "[y]ou need to sign her[e] to not have a margin account." That statement is not misrepresentative. Woods obviously had to sign a contract to establish her account with Advest, and she had two choices on the nature of the account: a margin account or a non-margin account. Maust correctly informed her that by signing where she did, she would be choosing the latter. No matter which she chose, the arbitration provision was identical.

{¶ 19} The law does not require that each aspect of a contract be explained orally to a party prior to signing. The contract Woods signed contained about six sentences, comprising less than a quarter of a page. The provisions at issue were not in fine print, and are part of an industry standard. The provisions were neither hidden nor out of the ordinary, and Maust did not misrepresent their nature.

{¶ 20} A classic claim of fraudulent inducement asserts that a misrepresentation of facts outside the contract or other wrongful conduct induced a party to enter into the contract. Examples include a party to a release misrepresenting the economic value of the released claim, or one party employing coercion or duress to cause the other party to sign an agreement. *Haller*, 50 Ohio St.3d at 14, 552 N.E.2d at 211. In this case, Woods makes no allegations about misrepresentations of facts outside the contract; she alleges only that Maust failed to tell her what was *in* the contract. At the center of Woods's allegation of fraudulent inducement is the naked truth that she did not read the contract. It drives a stake into the heart of her claim. "A person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different from what he intended, when he could have known the truth by merely looking when he signed."

*McAdams v. McAdams* (1909), 80 Ohio St. 232, 240-241, 88 N.E. 542, 544. See, also, *Upton v. Tribilcock* (1875), 91 U.S. 45, 50, 23 L.Ed. 203, 205 ("It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written."). The legal and common-sensical axiom that one must read what one signs survives this case. To find for Woods would destroy that standard.

{¶ 21} We find that there is no evidence of fraudulent inducement of the arbitration provision in this case. We hold that the trial court erred in finding otherwise and accordingly reverse the judgment of the court of appeals and remand the cause to the trial court for entry of an order staying the matter.

*Judgment reversed*

*and cause remanded.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.

————————————