OPINION
Plaintiffs-appellants MM Precision System Corp. and Ball Screws Actuators Co., Inc. appeal from an order of the trial court compelling arbitration and staying the litigation pending arbitration. The plaintiffs-appellants, hereinafter collectively referred to as MM, contend that the trial court erred by issuing the order without first determining whether the contract exists. MM contends that it never agreed to two documents purporting to constitute contracts, and that the purported signature of its president, James E. Helton, is a forgery. Defendants-appellees, hereinafter collectively referred to as Interactive Group, argue that the trial court properly submitted the issue of the existence of the contract to arbitration, since the documents purporting to constitute the contract contain arbitration clauses.
We agree with MM. The existence of the agreement to arbitrate depends upon the existence of the contract. Until the existence of the contract is established, there is no agreement to arbitrate.
Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
 I
Because this litigation has not advanced beyond the pleading stage, the facts are set forth in MM's complaint.
In mid-1997, Interactive Group contacted MM concerning the possible sale of computer equipment and services to MM. Following a sales presentation, MM declined to purchase any equipment or services from Interactive Group.
On or about September 23, 1997, Joseph Tacinelli, a former employee of MM, without permission or authority to do so, caused MM to issue and deliver to Interactive Group two checks, payable to Interactive Group, in a total amount of $100,749.30. On or about November 27, 1997, Tacinelli, without permission or authority to do so, caused MM to deliver to Interactive Group $608.80 for travel expenses for an employee of Interactive Group. On or about December 4, 1997, Tacinelli, without permission or authority to do so, caused MM to issue and deliver to Interactive Group a check payable to Interactive Group in the amount of $220.25.
On December 17, 1997, MM fired Tacinelli.
On or about December 19, 1997, MM received from Interactive Group two documents, both of which were dated September 30, 1997. One of these purported to be a contract between Interactive Group and M M; the other purported to be a contract between Interactive Group and plaintiff-appellant Ball Screws. Both contracts bore what purported to be the signature of James E. Helton, who was the president of both plaintiff-appellant corporations.
MM alleges, in its complaint, as follows:
 17. Said "Contract" had allegedly been executed in September 30, 1997 by James E. Helton (for Plaintiffs) and Mark Hellinger (for Defendants). However, on both documents, Mr. Helton's name had been signed by an unauthorized third party, without the knowledge or consent of Mr. Helton or Plaintiffs.
Following the receipt of the purported contracts, MM discovered the payments that had been made by it to Interactive Group, notified Interactive Group that the payments were unauthorized, and demanded their return. Interactive Group refused to return the monies. In its complaint, MM alleges that it neither contracted for, nor received, any of the equipment or the services identified in the alleged "contracts." MM further alleges that it has not received any other benefit under the alleged "contracts."
MM filed its complaint in the trial court, sounding alternatively in conversion or unjust enrichment, demanding judgment in the amount of $101,578.35.
Interactive Group filed a motion to stay litigation pending arbitration, and a motion to compel arbitration. In its memorandum in opposition to this motion, MM again took the position that it had never agreed to the alleged contracts. The trial court, without a hearing, granted Interactive Group's motion. From the order of the trial court compelling arbitration and staying the litigation pending arbitration, MM appeals.
 II
MM's sole assignment of error is as follows:
 THE TRIAL COURT ERRED WHEN IT GRANTED APPELLEES' MOTION TO STAY LITIGATION AND MOTION TO COMPEL ARBITRATION BASED ON ARBITRATION PROVISIONS FROM TWO NONEXISTENT AGREEMENTS, AND/OR WITHOUT FIRST HOLDING A JURY TRIAL AS REQUIRED BY R.C. § 2711.03.
MM relies upon R.C. 2711.03, which provides, in pertinent part, as follows:
 If the making of the arbitration agreement or the failure to perform it is an issue, the court shall proceed summarily to the trial thereof.
MM contends that it cannot be deemed to have consented to arbitration unless it entered into the contract containing the arbitration clause.
Interactive Group contends that where the party resisting arbitration disputes the existence of the contract, itself, rather than the existence or validity of the arbitration provision, the issue of the existence of the contract must be submitted to arbitration. In support of its contention, Interactive Group cites ABM Farms, Inc. v. Woods (1998), 81 Ohio St.3d 498, andKrafcik v. USA Energy Consultants, Inc. (1995), 107 Ohio App.3d 59
. The syllabus in ABM Farms, Inc., supra, is as follows:
 To defeat a motion for stay brought pursuant to R.C. 2711.02, a party must demonstrate that the arbitration provision itself in the contract at issue, and not merely the contract in general, was fraudulently induced.
In our view, ABM Farms, Inc., supra, is distinguishable. In that case, there was no dispute that the party resisting arbitration had signed the contract. She did not deny having signed the contract, but sought to be excused from its provisions, or at least from the arbitration provision, upon the ground that her execution of the contract had been fraudulently induced. In other words, she was seeking to avoid enforcement of a contract, the existence of which was not disputed. The Ohio Supreme Court held that, unless her agreement to the arbitration provision, specifically, was fraudulently induced, she could be compelled to arbitrate her claim of fraudulent inducement of the contract as a whole.
In the case before us, MM's position is not that it should be excused from performance of a contract to which it has agreed. To the contrary, it is contending that the purported contract does not exist, because MM never accepted Interactive Group's offer, or otherwise entered into an agreement with Interactive Group.
Krafcik, supra, is likewise distinguishable because it involved a contract, the existence of which was not disputed. The party resisting arbitration in that case claimed that it had been fraudulently induced to enter into the contract, and sought, therefore, to be relieved from its obligations under the contract. Again, in our view, this is distinguishable from a situation, as in the case before us, in which the very existence of the contract is at issue.
Interactive Group further relies upon Brumm v. McDonald Company Securities, Inc. (1992), 78 Ohio App.3d 96, for the proposition that agreement to an arbitration provision need not be evidenced by the signature of the party to be charged. In that case, the court relied upon the following statement in Fisser v.International Bank (C.A. 2 1960), 282 F.2d 231, at 233:
 It does not follow, however, that under the [Arbitration] Act an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision. For the Act contains no built-in Statute of Frauds provision but merely requires that the arbitration provision itself be in writing. Ordinary contract principles determine who is bound by such written provisions and of course parties can become contractually bound absent their signatures. It is not surprising then to find a long series of decisions which recognize that the variety of ways in which a party may become bound by a written arbitration provision is limited only by generally operative principles of contract law.
Brumm, supra at 103.
Applying general principles of contract law, the court inBrumm, supra, held that the party to be charged under the arbitration provision was made aware of, and assented to, that provision when she signed an option agreement.
In the case before us, by contrast, MM disputes that it ever entered into the agreement containing the arbitration provision. We agree with Interactive Group that MM's agreement to the alleged contracts containing arbitration provisions may be proven by means other than the signature of an authorized representative of MM. It may be proven, for example, by MM's course of conduct. However, our review of MM's pleadings suggest that it has never admitted, but has consistently denied, entering into the contracts. It contends that its payment of monies to Interactive Group was unauthorized, that it never received any products or services of Interactive Group, and that it never received any other benefit from the purported contracts.
We conclude that the very existence of the purported contracts containing the arbitration provisions is disputed by MM, and that, until the existence of the contracts is proven, MM may not be required to submit to arbitration.
 [Plaintiff's] complaint challenges the existence of a contract between the parties and, therefore, the arbitration clause in the loan agreement may not be enforced until the question of the existence of the contract is resolved.
 Williams v. Aetna Fin. Co. (August 9, 1991), Hamilton App. No. C-900663, unreported, cited in Williams v. Aetna Fin. Co. (1998),83 Ohio St.3d 464, at 467.
We suggest that, upon the remand of this cause, the trial court should bifurcate the issue of the existence of the contracts. If Interactive Group can prove, to the satisfaction of the fact finder, the existence of the contracts, then remaining issues may be referred to arbitration.
MM sole assignment of error is sustained.
 III
MM's sole assignment of error having been sustained, the judgment of the trial court is Reversed, and this cause isRemanded for further proceedings consistent with this opinion.
YOUNG, J., concurs.