This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Alice Haubert, ("Haubert"), appeals the decision of the Summit County Court of Common Pleas granting judgment to appellees, Clark and Teresa Grable ("Grables"). We affirm.
 I.
The Grables filed a complaint against Haubert seeking damages for a breach of contract, promissory estoppel and unjust enrichment.[1] The contract involved the sale of Haubert's property located on Pressler Road. The property contained an old cement plant and three underground fuel tanks. Section 11(C) of the contract provides that "[Haubert] will be responsible for the removal of three (3) underground gasoline tanks located on the subject premises as a condition of closing, and will provide [the Grables] with a certificate of legal compliance from a qualified environmental professional."
The Grables alleged that Haubert breached section 11(C) of their contract. Haubert answered and filed a counterclaim against the Grables. Both parties moved the trial court for summary judgment. The trial court denied both motions, and the case proceeded to a bench trial.
The trial court awarded judgment to the Grables in the amount of $9,519.00 for breach of contract and awarded judgment to the Grables on Haubert's counterclaim. This appeal followed. The assignments of error will be discussed out of order for ease of discussion.
 II.
Assignment of Error No. 2:
 TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY GRANTING JUDGMENT IN FAVOR OF APPELLEE AFTER TRIAL.
In her second assignment of error, Haubert argues that the trial court erred in granting judgment in favor of the Grables in the amount of $9,519.00.[2] We disagree.
When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. Frederick v. Born (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14. In determining whether a criminal conviction is against the manifest weight of the evidence:
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment].
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175; see also State v. Otten (1986),33 Ohio App.3d 339, 340. Accordingly, before an appellate court will reverse a judgment as against the manifest weight of the evidence in a civil context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
 Generally, a breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the non-breaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the non-breaching party suffered damages as a result of the breach.
Garofalo v. Chicago Title Ins. Co. (1995), 104 Ohio App.3d 95, 108. A claimant seeking to recover for breach of contract must show damage as a result of the breach. Metropolitan Life Ins. Co. v. Triskett Illinois,Inc. (1994), 97 Ohio App.3d 228, 235. Where damages are established, the evidence need only tend to show the basis for the computation of damages to a fair degree of probability. Brewer v. Brothers (1992),82 Ohio App.3d 148, 154.
At trial, Mr. Grable testified that he negotiated with Haubert for several months regarding the conditions and purchase price of the Pressler Road property. Section 11(C) of the final contract provides that Haubert is responsible for the removal of the three tanks and is responsible for obtaining a certificate of legal compliance before closing. Mrs. Grable testified that Mr. Freeman, Haubert's attorney, drafted the contract that included section 11(C). After signing the contract, the Grables demolished the old cement plant in an effort to prepare the property for their trucking business.
Mr. Grable provided Haubert with a list of qualified professionals who could remove the underground tanks. Mr. Grable testified that Haubert instructed him to hire a qualified contractor to remove the tanks because he "knew more about these matters." Based on that discussion with Haubert, Mr. Grable hired Underground Storage Tank Technologies to remove the tanks. The Grables paid for removing the tanks, the disposal of old diesel fuel, and the certified inspection.
Mr. Grable testified that he contacted Mr. Freeman regarding reimbursement for removing the tanks. Mr. Freeman denied Haubert's responsibility regarding the tanks and refused to reimburse the Grables. This dispute delayed the closing. The delay of the closing prevented the Grables from operating their trucking business. The Grables notified the escrow agent and Mr. Freeman that due to the hardship caused by the delay they would accept the deed under protest. On November 16, 1999, the Grables filed suit against Haubert seeking reimbursement for removing the tanks. The transaction closed on November 21, 1999.
The Grables presented evidence from Wendy Hinkle, the escrow agent involved in the closing. Ms. Hinkle stated that her legal department modified a contingency letter for the Grables. The modification reflected the Grables reservation of rights against the seller, Haubert.
Haubert testified that her attorney drafted the contract and that she did not read the contract before signing. She denied that an agreement was made with Mr. Grable authorizing him to contract for the removal the tanks. She stated that it was her understanding that the parties had negotiated a lower contract price to reflect the fact that the Grables would be responsible for cleaning up the property including the tank removal. The original purchase price of $103,500.00 was reduced to $80,000.00 to reflect the cost of cleaning up the property. However, on cross-examination, Haubert testified that her estimate for clean-up did not include a price for removing the tanks.
Mr. Freeman testified that the lower contract price did reflect negotiations to hold the Grables responsible for removing the tanks. He drafted the contract and read it before the signing. However, he was unable to explain why section 11(C) was drafted to hold Haubert responsible for removing the tanks. On cross-examination, Mr. Freeman testified he had sought estimates for removing the tanks. Evidence was presented that Mr. Freeman informed the zoning board that the contract price would reflect a reduction of price for the tanks' removal. The reduced contract price of $80,000.00 does not include a further reduction for the removal of the tanks, estimated at $14,642.00.
After a careful review of the record, we cannot say that the trial court clearly lost its way and created a manifest miscarriage of justice. Section 11(C) of the contract provides that Haubert is responsible for removing the tanks. Haubert's attorney drafted the contract, including section 11(C). Haubert acknowledged that she signed the contract without reading its contents.
 A person of ordinary mind cannot say that he was misled into signing a paper which was different from what he intended to sign when he could have known the truth merely by looking when he signed. * * * If this were permitted, contracts would not be worth the paper on which they were written. If a person can read and is not prevented from reading what he signs, he alone is responsible for his omission to read what he signs.
Harwood v. Firstmerit EST Bank (Sept. 10, 1997), Lorain App. No. 91CA006666, unreported, at 5; see also ABM Farms, Inc. v. Woods (1998),81 Ohio St.3d 498, 503. We find that Haubert breached the contract by refusing to pay $9,519.00 for the costs of removing the tanks. Haubert's second assignment of error is overruled.
 III.
Assignment of Error No. 1:
 TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR SUMMARY JUDGMENT.
In her first assignment of error, Haubert argues that the trial court's denial of her motion for summary judgment was error. We disagree.
In her motion for summary judgment, Haubert argued that pursuant to the doctrine of merger, the Grables were precluded from raising their breach of contract claim. The breach of contract was fully adjudicated at trial and determined in the Grables' favor. "Any error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made." Continental Ins.Co. v. Whittington (1994), 71 Ohio St.3d 150, syllabus. Thus, assuming there was some error in the denial of Haubert's motion, any such error was rendered harmless by our disposition of Haubert's second assignment of error, wherein we upheld the judgment in favor of the Grables. Haubert's first assignment of error is overruled.
 IV.
Having overruled both of Haubert's assignments of error, the judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
WILLIAM R. BAIRD, BATCHELDER, P.J., SLABY, J. CONCUR.
[1] At trial, the Grables voluntarily dismissed their claim for unjust enrichment.
[2] On appeal, Haubert argues that the doctrine of merger precludes the Grables from raising a breach of contract claim. This argument is without merit because evidence was presented that the Grables accepted the deed under protest. The doctrine of merger does not bar a claim on a contract if "the deed was accepted under protest and with a reservation of the right to insist upon a strict adherence to the terms set forth in the prior agreement." Mayer v. Sumergrade (1960), 111 Ohio App. 237, 239, quoting 40 Ohio Jurisprudence, 1001, Section 90.