JOURNAL ENTRY AND OPINION
This is an appeal from a judgment, entered after a bench trial before Judge Nancy Margaret Russo, that granted declaratory and injunctive relief to appellee, Cleveland Thermal Energy Corporation (CTEC). Appellant Cleveland Electric Illuminating Company (CEI) claims it was error to conclude it did not have an arbitrable contract claim against CTEC, in ruling alternatively that it had waived its right to arbitrate, and in enjoining it from demanding arbitration on its contract claim. Although the judge erred in finding the parties did not agree to arbitrate, we agree that CEI waived its right to arbitrate the current dispute, and affirm the judge's order to the extent that it enjoins CEI from arbitrating that dispute.
In December of 1987, CEI sold CTEC a steam heating system serving the downtown Cleveland area but retained ownership of an electrical network that shared underground space with the steam system's distribution pipes. Because of the shared space, the electrical network sometimes incurs damage from steam leaks, and the contract of purchase included a section outlining the parties' rights and obligations as to liability for those damages. Section 6.02 of the contract states:
 Seller and Purchaser acknowledge that (i) in certain locations distribution pipes for the System[1] share space with the Seller's electricity transmission system (the `Electricity Network'), (ii) leaks from the System can damage the Electricity Network and (iii) Seller instituted a program to upgrade the Electricity Network in order to protect the Electricity Network from leaks in certain locations from the System (the `Upgrades').
Any damage to the Electricity Network caused by the System prior to the closing date or to the Upgrades for a period of two (2) years after the Closing Date will be the responsibility of Seller and any damage to the Electricity Network caused by leaks from the System after the Closing Date will be the responsibility of the Purchaser, other than (i) to the Upgrades which, for a period of two (2) years from the Closing Date, will be the responsibility of Seller, and (ii) damage occurring at any of the hotspots listed on Exhibit `W' annexed hereto, for which Seller and Purchaser shall bear equal responsibility for a period of two (2) years from the Closing Date. Thereafter, Purchaser shall bear sole responsibility for damage to the Electricity Network caused by leaks from the System. Other than as otherwise provided with respect to the Upgrades and the hotspots listed on Exhibit `W', it is agreed that for purposes of this Section 6.02, the existence of wear and tear in the System and the Electricity Network prior to the Closing Date will not relieve the Purchaser from responsibility for leaks after the Closing Date.
The parties agree that the two year period after the Closing Date has passed, and that the current question concerns the interpretation of the thereafter clause requiring CTEC to bear sole responsibility for damage to the Electricity Network caused by leaks from the System. On March 1, 1999, CEI filed a complaint for damages in the common pleas court, alleging that in October 1998 a steam leak occurred beneath Superior Avenue between East 17th Street and East 18th Street that damaged its electrical network, and that CTEC was liable in both contract and negligence.
In its answer CTEC denied liability and alleged as an affirmative defense that the common pleas court lacked jurisdiction over the contract claim because the contract contained a mandatory arbitration clause. The arbitration provision, Section 11.10 of the contract, called for arbitration of [a]ny controversy, claim or dispute arising out of or relating to this Agreement * * * or the interpretation or breach thereof[.] CTEC, however, did not demand arbitration or request a stay under R.C. 2711.02.[2]
CEI voluntarily dismissed its complaint on August 13, 1999, and filed a demand for arbitration on September 1, 1999. CTEC then filed the declaratory judgment complaint at issue here, and sought a determination that CEI's claim for damages under Section 6.02 of the contract was not subject to arbitration or that CEI waived arbitration of its contract claim with respect to the event at issue. Count three of the complaint requested a pre-emptive interpretation of Section 6.02 in the event the judge found the dispute subject to arbitration, and requested reformation of the contract based on mutual mistake if the judge ruled that the plain language of Section 6.02 obligated CTEC to pay for all damage to the electrical network caused by steam leaks.
The judge granted CTEC a preliminary injunction to prevent the arbitration from going forward while its declaratory judgment action was pending. On August 14, 2000, after the preliminary injunction but prior to trial, CEI filed an amended arbitration claim, in which it apparently abandoned its contractual claim for damages stemming from the October 1998 events, and instead requested a general ruling to resolve the interpretational dispute that had arisen under Section 6.02. On September 29, 2000, CEI refiled the complaint it had dismissed under Civ.R. 41(A)(1) because the statute of limitations on its negligence claim was set to expire.[3] The complaint again asserted negligence and contract theories of recovery, but added a paragraph stating that it was alleging the contract action only in order to preserve the claim pending resolution of the declaratory judgment action.
The declaratory judgment action was tried to the judge on December 18 and 20, 2000. She granted directed verdicts in CEI's favor on counts three and four[4] of CTEC's complaint and, on August 31, 2001, after the parties submitted post-trial briefs and proposals, ruled in CTEC's favor on the remaining issues.
In her findings of fact and conclusions of law, the judge repeated her earlier finding, made in the preliminary injunction ruling, that Section 6.02 was ambiguous, and thus cannot clearly exhibit an agreement to arbitration. She also found, however, that Section 6.02 did not make CTEC contractually liable for damages to the electrical network caused by steam leaks. In the alternative, the judge found that CEI had waived its right to demand arbitration on the underlying steam leak claim when it abandoned the claim in its amended demand for arbitration and refiled its previously dismissed complaint. In its grant of relief, the judge stated that Section 6.02 of the Agreement does not create special causes of action and is ambiguous. * * * CEI is permanently enjoined from arbitrating this cause of action. Finally, the judge awarded costs to CTEC pursuant to its request for relief, but did not award attorney's fees.
The first two of CEI's four assignments of error state:
 I. The Trial Court Erred by Refusing Arbitration When the Parties Clearly Agreed to Arbitrate Pursuant to the All Encompassing Arbitration Clause, Article 11.10, of the Agreement.
 II. The Trial Court Erred by Ruling on the Merits of Defendant-appellant's Contractual Claim Both in its Preliminary Injunction Order and in the Final Order.
These assignments of error are inextricably linked in the judge's ruling. Her determination that the parties did not agree to arbitrate CTEC's contractual obligation under Section 6.02 is possible only after the determination that CTEC had no contractual obligation to pay damages under that section.
The interpretation of unambiguous written contract terms is a matter of law that we review de novo.[5] Although the judge found Section 6.02 ambiguous, which might then raise factual issues affecting interpretation, that finding is irrelevant here. The relevant provision is Section 11.10, which states the parties' agreement to arbitrate disputes, and there is no claim of ambiguity concerning that section.
There is no dispute here that the parties entered an agreement containing an arbitration clause, and there is no claim of fraud or unconscionability concerning its language or scope.[6] Rather, the question here simply concerns whether a particular dispute is within the scope of the arbitration provision, and thus we construe the provision in favor of arbitration.[7]
CTEC denied that Section 6.02 created any contractual remedy for damages to the electrical network caused by steam leaks and claimed that CEI's only remedies were outside the contract, and thus not subject to arbitration. CEI argued that the existence of a contractual remedy was an interpretational dispute expressly included in the arbitration clause. The judge, relying on Council of Smaller Ents. v. Gates, McDonald Co., supra, ruled that her duty to determine whether the parties agreed to arbitrate required her to determine whether Section 6.02 created a contractual cause of action. We disagree.
The arbitration provision contemplates a broad scope of arbitrable issues, including any issue relating to the agreement and any issue concerning its interpretation. The existence and/or extent of CTEC's contractual obligation under Section 6.02 is a matter of contractual interpretation expressly included within the arbitration provision. Nothing in Council of Smaller Ents. mandates, authorizes, or even suggests the result CTEC advocates here. In fact, CTEC's proposal and the judge's ruling are inconsistent with two of the four general principles * * * to be applied when considering the reach of an arbitration clause.[8] These are: (1) that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit; (2) the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator; (3) in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims; and (4) where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that `[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'[9]
CTEC purports to rely heavily on the first and second principles, but does so by ignoring the third and fourth. Its argument attempts to divert attention from the actual arbitration provision, which expressly includes interpretational disputes, by focusing on the merits of the interpretational dispute itself. CTEC's request sought and obtained a ruling on the merits of the interpretational dispute by claiming the interpretation was necessary to determine whether an agreement existed. Not only does this violate the third principle stated above, CTEC's argument cannot begin to overcome the presumption of arbitrability stated in the fourth. The question raised is one of interpretation, and the arbitration provision specifically states that such questions are to be submitted to arbitration. Because the dispute is expressly covered, CTEC's argument falls well short of the positive assurance needed to rebut the presumption that the arbitration clause applies.
CTEC's argument flouts a principle implicit in the United States Supreme Court's majority opinion in ATT Technologies, supra, and stated explicitly in a concurrence. In that case the majority reaffirmed the four general principles outlined in Council of Smaller Ents. and remanded the case to the United States Court of Appeals for the Seventh Circuit for a judicial determination of arbitrability, rejecting that court's finding that a judicial determination would entangle it in the merits of the dispute. In doing so, the majority opinion specifically reaffirmed the principles that judges should avoid resolving, or even suggesting resolutions, on the merits of disputes prior to determining arbitrability, and should resolve disputed questions in favor of arbitration. The Court specifically reiterated that judges have no business weighing the merits of the grievance[10] when determining arbitrability, and then reiterated the strength of the presumption of arbitrability, stating:
 Such a presumption is particularly applicable where the clause is as broad as the one employed in this case * * *. In such cases, `[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'[11]
In concurrence, Justice Brennan, joined by Justice Marshall and Chief Justice Burger, explained more clearly the connection between the third and fourth principles, stating that the presumption that the arbitration clause applies prevents questions that would make arbitrability depend upon the merits of the parties' dispute.[12] In such cases, the presumption applies and the dispute is arbitrable unless forceful evidence shows otherwise.[13] By making the arbitrability determination dependent on the interpretation of Section 6.02, CTEC's requested relief is contrary to both ATT Technologies and Council of Smaller Ents.
CEI's second assignment of error also has merit because the judge ruled that it had no contractual right of recovery prior to ruling that CTEC had not agreed to arbitrate the dispute. The former ruling purported to determine the exact question of interpretation that CEI wished to submit to the arbitrator, despite the judge's claim that she was interpreting whether a claim existed, not what interpretation should be given to Section 6.02. Indeed, the judge's ruling mooted her determination of whether the parties had agreed to arbitrate, because she had already decided the issue. CEI never disputed that negligence claims were not covered under the arbitration provision, but instead claimed a right to arbitrate the existence of contractual claims. The judge eliminated the question for arbitration by determining that no contractual claim existed, and then ruled that the parties had not agreed to arbitrate negligence claims, which was undisputed. The first and second assignments of error are sustained.
 III. The Trial Court Erred by Ruling That Defendant-appellant Waived its Right to Arbitrate.
A determination that one party has waived its right to arbitration depends on the facts and circumstances of each case, and we will not overturn a judge's ruling that is based on such facts absent an abuse of discretion.[14] CEI admits that its initial filing of a complaint waived its contractual right to arbitration, but claims it validly revoked that waiver by voluntarily dismissing the complaint.[15] While CTEC does not concede that CEI validly revoked its initial waiver, its argument focuses more on CEI's subsequent conduct, particularly its August 14, 2000, amended demand for arbitration, which no longer asserts a contractual right to damages for the events of October 1998, but instead seeks only to arbitrate the general interpretational question, for use in future disputes, of whether it possesses a contractual right of recovery for electrical damage caused by steam leaks. Based upon CEI's amended demand, CTEC's appellate brief limits its waiver argument to the underlying claim, asserting only that CEI has waived its right to seek contractual damages in arbitration for the October 1998 claim. The judge's ruling similarly refers to a waiver of the underlying steam leak claim, and enjoins CEI only from pursuing arbitration on that claim.
CEI has waived arbitration of its claim for damages for the events of October 1998. Although some of its actions may not support waiver because they were taken in the context of the declaratory judgment litigation and thus were not solely voluntary, nothing in that litigation necessitated that CEI's amended demand for arbitration exclude its damages claim. Moreover, whatever the intended effect of CEI's disclaimer language concerning its contractual claim in the refiled complaint, nothing in that complaint can revive CEI's right to arbitrate a damages claim when it abandoned that right prior to refiling the complaint.
Finding that CEI waived its underlying claim, however, does not resolve the interpretational question. While the judge did not address or enjoin CEI's pending arbitration demand, she cannot have intended to allow it to go forward unencumbered. The judge's ruling that CEI had no contractual right of recovery under Section 6.02 would not allow an arbitrator to find otherwise, and thus her ruling could only have been intended to extinguish the August 14, 2000 demand as well.
Nevertheless, despite the alternative ruling on waiver, it appears that neither the judge nor CTEC fully contemplated the consequences that would result if a reviewing court found error in the judge's initial ruling on arbitrability. Consequently, there is no ruling or argument addressed to whether CEI has waived its right to arbitrate the meaning of Section 6.02 altogether, or has simply waived its right to do so with respect to this particular case.
As already noted, a party who has waived its right to enforce a contract term can revoke the waiver unless the revocation will prejudice the opposing party.[16] The opposing party's right to enforce the waiver is based upon equitable estoppel, and thus
requires a showing that failure to enforce the waiver will visit some detriment upon him.[17]
Although CTEC presented evidence to show that it would be prejudiced by CEI's revocation of the waiver with respect to the October 1998 claim, it did not present evidence or argument showing that CEI should be barred from arbitrating the meaning of Section 6.02, as stated in the amended demand, for use in any future dispute. CTEC did present evidence that CEI had waived arbitration by filing common pleas actions for previous steam leak claims, but it has not shown how those waivers have prejudiced it with respect to future claims. We note, however, that our ruling here is limited; we find only that CTEC did not show, in this litigation, that CEI had waived its right to claim a contractual right of recovery under Section 6.02. We express no opinion on the merits of the issue, or even on the preclusive effect of this litigation upon it.
We also note that CEI now has two pending claims seeking a ruling on the same issue. It has an amended demand for arbitration, filed August 14, 2000, and a complaint for contract damages, filed September 29, 2000, both of which seek resolution of its contractual rights under Section 6.02. Despite the fact that the arbitration demand no longer seeks damages for the October 1998 events, CEI cannot seek resolution of the same question in two fora.
While we express no opinion on the ultimate resolution of the matter, we note as a caution that CEI can no longer arbitrate its contractual right to damages for the October 1998 events, but it can continue to seek such damages in the common pleas action. By continuing to seek contract damages in the common pleas action, however, CEI would necessarily submit the interpretational question to that judge, whose judgment would have preclusive effect in future actions. CEI might again dismiss its contractual claim in the common pleas action and seek resolution in arbitration, but we again note, as a caution only, that CEI's September 29, 2000 complaint already raises questions concerning its waiver of the August 14, 2000 arbitration demand.
Because the judge found only that CEI waived its right to arbitrate the underlying claim, the third assignment is overruled. The fourth assignment states:
 IV. The Trial Court Erred by Ordering Defendant-appellant to Pay for the Costs.
Although the judge erroneously ruled on the merits of CEI's arbitration claim and found that the parties had not agreed to arbitrate, CTEC nonetheless prevailed on its claim that CEI had waived its right to arbitrate the question of contractual damages from the October 1998 steam leak claim, and we have affirmed that portion of the ruling. Civ.R. 54(D) states that costs shall be allowed to the prevailing party unless the court otherwise directs. CTEC's declaratory judgment action sought to prevent arbitration of CEI's demand for contract damages from the October 1998 steam leak claim, and that effort was successful. The fourth assignment of error is overruled.
Based on our resolution of the first two assignments of error, we vacate that portion of the judge's ruling that construes Section 6.02 of the contract, and reverse the ruling that the parties did not agree to arbitrate disputes over the meaning of that section. We affirm the finding that CEI waived its right to arbitrate its contractual right to damages from the October 1998 steam leak claim, and affirm the order granting costs to CTEC.
Judgment affirmed in part, reversed in part, and vacated in part.
It is ordered that the parties bear their own costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J., and PATRICIA A. BLACKMON, P.J., CONCUR.
[1] The term System, as used in the contract, refers to the steam system.
[2] Its jurisdictional claim was thus unenforceable, because a contractual arbitration provision can be waived and thus does not invoke subject matter jurisdiction, and the failure to demand arbitration contemporaneously, or at least within a reasonable time, would waive an asserted lack of personal jurisdiction, if such an assertion could be made. R.C. 2711.02(B) appears inconsistent with a claim that personal jurisdiction is lacking, as it sets forth procedures for staying the action rather than dismissing it.
[3] R.C. 2305.10.
[4] Count four concerned a discovery dispute that is not at issue on appeal.
[5] Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm (1995),73 Ohio St.3d 107, 108, 1995-Ohio-214, 652 N.E.2d 684.
[6] Cf. Williams v. Aetna Finance Co. (1998), 83 Ohio St.3d 464,472-473, 1998-Ohio-294, 700 N.E.2d 859 (unconscionability); ABM Farms, Inc. v. Woods (1998), 81 Ohio St.3d 498, 1998-Ohio-612, 692 N.E.2d 574, syllabus (fraud).
[7] Williams, 83 Ohio St.3d at 471; Council of Smaller Ents. v. Gates, McDonald Co. (1998), 80 Ohio St.3d 661, 666, 1998-Ohio-172,687 N.E.2d 1352.
[8] Council of Smaller Ents., 80 Ohio St.3d at 665, citing ATT Technologies, Inc. v. Communications Workers of Am. (1986), 475 U.S. 643,648-651, 106 S.Ct. 1415, 89 L.Ed.2d 648.
[9] Council of Smaller Ents., 80 Ohio St.3d at 665-666. (Citations omitted.)
[10] ATT Technologies, 475 U.S. at 650. (Citation omitted.)
[11] Id. (Citation omitted.)
[12] Id. at 654 (Brennan, J., concurring).
[13] Id. at 654-655.
[14] Wishnosky v. Star-Lite Bldg. Dev. Co. (Sept. 7, 2000), Cuyahoga App. No. 77245.
[15] Standard Roofing Co. v. John G. Johnson Sons Constr. Co. (1977), 54 Ohio App.2d 153, 158-159, 8 O.O.3d 281, 376 N.E.2d 610.
[16] Standard Roofing Co., supra.
[17] Andrews v. Ohio State Teachers Retirement Sys. Bd. (1980),62 Ohio St.2d 202, 205, 16 O.O.3d 240, 404 N.E.2d 747; Hounshell v. Am. States Ins. Co. (1981), 67 Ohio St.2d 427, 21 O.O.3d 267, 424 N.E.2d 311, syllabus; Standard Roofing Co., supra. In light of these authorities, language to the contrary in Phillips v. Lee Homes, Inc. (Feb. 17, 1994), Cuyahoga App. No. 64353, is mistaken.