OPINION
{¶ 1} In April 1999, plaintiffs, Valarie DiPietro and Diana Lancaster, contracted to purchase the home of defendants, Jeffrey and Normalee Ginther.[1] Prior to purchasing the property, defendants provided plaintiffs with a Residential Property Disclosure Form upon which defendants represented that they did not know of any current or previous water damage to the basement of the home and were not aware of any repairs or attempts to control any water-related problems. Prior to their purchase, plaintiffs also had the property inspected by defendant RCB Inspections, Inc. ("RCB"). Plaintiffs personally contacted RCB in order to have RCB inspect the premises and to advise them on its pre-sale condition. Plaintiffs were familiar with RCB's business and had previously retained RCB to inspect another home which they had purchased. During the course of his inspection, RCB's employee inspector did not observe or report any water-related problems in the basement. The sale of the home was subsequently closed, and the plaintiffs took possession in June 1999.
{¶ 2} In a complaint filed in March 2001, plaintiffs allege that on or about April 4, 2000, their basement began to accumulate water, which resulted in permanent damage to the structure. In addition to suing the Ginthers for misrepresentation, fraud, and breach of contract, plaintiffs also brought a claim for negligent inspection and breach of contract against defendant RCB.
{¶ 3} On April 16, 2001, RCB moved the trial court to dismiss plaintiffs' claim or, in the alternative, to stay the proceedings and refer the matter to arbitration. The trial court denied that motion on August 16, 2001, concluding that it would be unconscionable to compel the plaintiffs to arbitrate their claims against RCB. RCB now appeals that ruling, raising the following two assignments of error:
{¶ 4} "[I.] The trial court erred as a matter of law in denying appellant's motion to dismiss or, in the alternative, for stay of proceedings and enforcement of arbitration agreement pursuant to O.R.C. § 2711.02.
{¶ 5} "[II.] The trial court erred in declaring and concluding that the arbitration clause contained in appellant's standard printed contract is `invalid' and that to require plaintiff-appellees to engage in arbitration with the AAA is `unconscionable.' "
{¶ 6} At the time plaintiffs retained RCB to perform the pre-purchase inspection of their home, they signed a contractual Inspection Agreement which comprehensively set forth the duties and obligations of both parties and which also contained a binding arbitration provision. The following language appeared on the front page of the Inspection Agreement above the signatures of both plaintiffs and in bold, capitalized type:
{¶ 7} "Arbitration Provision — All controversies or claims between the parties hereto in any way, directly or indirectly, arising out of, connected with or relating to the interpretation of this Agreement, the scope of the services to be provided by AmeriSpec, the Inspection Report to be issued by AmeriSpec, or as to any other matter involving the contemplated transaction, including, but not limited to, (a) any promises, representations or negotiations concerning either the performance of the AmeriSpec duties hereunder, (b) any act or omission of AmeriSpec in the performance of its responsibilities hereunder, and/or (c) the documents relating thereto, shall be determined by arbitration in accordance with the applicable rules of the American Arbitration Association, or, if in Canada, the Canadian Association of Arbitrators, except for the procedure for selection of the arbitrator. The parties shall mutually appoint an arbitrator who is knowledgeable and familiar with the professional home inspection industry. The arbitration decision shall be binding on all parties and judgment upon the award rendered may be entered in any court having jurisdiction.
{¶ 8} "* * *
{¶ 9} "THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES."
{¶ 10} Ohio and federal courts encourage arbitration to settle disputes. ABM Farms, Inc. v. Woods (1998), 81 Ohio St.3d 498, citing Kelm v. Kelm (1993), 68 Ohio St.3d 26, 27; and Southland Corp. v. Keating (1984), 465 U.S. 1, 10, 104 S.Ct. 852. As noted by the Ohio Supreme Court in ABM Farms, our General Assembly also favors arbitration. Specifically, R.C. 2711.02 requires a trial court to stay an action if the issues involved are subject to an arbitration agreement, and pursuant to R.C. 2711.03, a party to an arbitration agreement may seek an order compelling arbitration of the dispute at hand.
{¶ 11} As this court explained in Vibration Instrumentation Consultants, Inc. v. Entek IRD Internat'l. Corp. (Mar. 2, 1999), Franklin App. No. 98AP-388, "[c]ontracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts." Id., citing Southland Corp., supra. When presented with a motion to compel arbitration, a state court must first determine whether the parties agreed to arbitrate the dispute by applying the federal substantive law of arbitrability. The federal substantive law of arbitrability was set forth by the United States Supreme Court in Prima Paint Corp. v. Flood Conklin Mfg. Co. (1967), 388 U.S. 395,87 S.Ct. 1801. In Prima Paint, the United States Supreme Court distinguished between a claim that the entire contract was invalid and unenforceable and a claim which only attacked the arbitration clause contained within the agreement. Therein, the Supreme Court explained:
{¶ 12} "* * * [T]he federal court is instructed to order arbitration to proceed once it is satisfied that `the making of the agreement for arbitration or the failure to comply [with the arbitration agreement] is not in issue.' Accordingly, if the claim is fraud in the inducement of the arbitration clause itself an issue which goes to the `making' of the agreement to arbitrate the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally. * * * We hold, therefore, that in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate. * * *" Id. at 403-404.
{¶ 13} The statutory language referred to by the Supreme Court in the quoted excerpt is a reference to the Federal Arbitration Act, 9 U.S.Code., et seq., which is specifically applicable to the matter currently before this court. In Vibration Instrumentation Consultants, supra, we explained that:
{¶ 14} " `Although the decision in Prima Paint was made in the context of federal court actions, the Supreme Court expressly required state courts to conform to the provisions of the Federal Arbitration Act in Southland Corp. v. Keating (1984), 465 U.S. 1 * * * The Supreme Court in Southland held that there are only two limitations on the enforceability of arbitration provisions governed by the Federal Arbitration Act: (1) such clauses must be part of a written maritime contract or a contract evidencing a transaction involving commerce; and (2) such clauses may be revoked only upon grounds that exist in law or in equity for the revocation of any contract.
{¶ 15} " `Beyond these limitations discussed in Southland, state law is not to encroach upon the enforceability of arbitration clauses. Even if the party opposing arbitration is relying upon state statutory rights, the Federal Arbitration Act still applies. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc. (1985), 473 U.S. 614. * * *'
{¶ 16} " '* * *
{¶ 17} " `Thus, a court should not consider the question of whether an entire contract is invalid due to fraud in the inducement if the contract contains an otherwise valid arbitration clause. If the agreement to arbitrate is not at issue, then the court must compel arbitration to proceed. The court can adjudicate the matter only if the plaintiff is alleging fraud in the inducement of the arbitration clause itself. See Krafcik v. USA Energy Consultants, Inc. (1995),107 Ohio App.3d 59 * * *; Weiss; Smith v. Snap-On Tools Corp. (Jan. 6, 1993), 1993 Ohio App. Lexis 6511, Hamilton App. No. C-910902, unreported.' " Id.
{¶ 18} Accordingly, "[a] claim that the contract containing the arbitration clause was induced by fraud does not defeat a motion to compel arbitration unless the claimant can demonstrate specifically that the arbitration clause itself was fraudulently induced." ABM Farms, supra, at 501.
{¶ 19} Ohio law regarding the severability of an arbitration clause from the remainder of a contract has been codified in R.C. 2711.03, which provides:
{¶ 20} "The party aggrieved by the alleged failure of another to perform under a written agreement for arbitration may petition any court of common pleas having jurisdiction of the party so failing to perform for an order directing that such arbitration proceed in the manner provided for in such agreement. * * * The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the agreement. If the making of the arbitration agreement or the failure to perform it is in issue, the court shall proceed summarily to the trial thereof."
{¶ 21} Indeed, R.C. 2711.01 also acknowledges that an arbitration clause is, in effect, a contract within a contract, subject to revocation on its own merits. In ABM Farms, supra, the court explained:
{¶ 22} "R.C. 2711.01(A) refers to the arbitration provision in a contract, and notes that it is valid unless revocable under contract law. Because the arbitration clause is a separate entity, it only follows that an alleged failure of the contract in which it is contained does not affect the provision itself. It remains as the vehicle by which the legitimacy of the remainder of the contract is decided. " (Emphasis sic.) Id. at 502.
{¶ 23} As set forth above, the trial court is required to compel compliance with an arbitration provision in a contract so long as the making of the agreement to arbitrate or the failure to comply with that agreement is not disputed. In this case, in both their complaint and response to defendant's motion to compel arbitration, plaintiffs argue that the Inspection Agreement, as a whole, is a contract of adhesion and should therefore not be enforced on equitable grounds. Plaintiffs do not seek rescission of the contract, nor do they dispute that they knowingly entered into an agreement which contained a clear mandatory arbitration provision. Simply, plaintiffs do not challenge either the fact of the making of the arbitration provision, or any failure to comply therewith. Rather, they admit that the contract and arbitration agreement exist, contending only that it is now inequitable to require them to comply with that agreement.
{¶ 24} Finally, assuming plaintiffs' contention could be construed as a specific challenge to the arbitration provision, we find the record devoid of evidence or testimony which would clearly support a finding that the arbitration clause violates equitable principles given all of the attendant facts and circumstances of this case. Indeed, although plaintiffs now contend that the terms and conditions of the Inspection Agreement were not bargained for, plaintiffs present no operative facts, evidence, or testimony that they even discussed the terms and conditions of the agreement with RCB's representative, or asked to have any of the terms or conditions removed or modified in any way. Further, plaintiffs claim no fraud in the inducement or fact, nor do they claim that RCB engaged in any fraudulent conduct or any deceptive or unfair business practice. There is also no clear indication in the record to support any conclusion as to what the probable cost of the arbitration proceeding will be. As such, this matter fits squarely within the rule of law set forth in Prima Paint, and the trial court incorrectly ruled otherwise.
{¶ 25} For the foregoing reasons, both of defendant RCB's assignments of error are sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court with instructions to grant defendant RCB's motion for stay and to compel arbitration.
Judgment reversed and cause remanded with instructions.
BOWMAN, J., concurs.
KLATT, J., dissents.
[1] The residence is located at 233 Charleston Avenue in the city of Columbus.