BATTLE, Appellee,

v.

**BILL SWAD CHEVROLET, INC., Appellant.**

[Cite as *Battle v. Bill Swad Chevrolet, Inc.* (2000), 140 Ohio App.3d 185.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–333.

Decided Sept. 29, 2000.

Charley Hess, for appellee.

Buckingham, Doolittle & Burroughs, L.L.P., and Joel H. Mirman, for appellant.

TYACK, Judge.

On November 29, 1999, Maxcine C. Battle filed a complaint in the Franklin County Court of Common Pleas against Bill Swad Chevrolet, Inc. ("Bill Swad"). Battle set forth claims of breach of express warranties, fraud, and misrepresenta-

tion, and violations of the Ohio Consumer Sales Practices Act ("CSPA"). The claims arose out of Battle's purchase of a used automobile from Bill Swad. Battle averred that prior to purchasing the vehicle, Bill Swad's salesperson represented that the vehicle had not previously been in a wreck or a flood and had not suffered a blown engine. Subsequent to purchasing the vehicle, Battle learned that the vehicle had been in two wrecks, one of which occurred while an employee of Bill Swad was driving it, had been severely damaged, and had been repaired by Bill Swad with a material called "Bondo." In her prayer for relief, Battle requested, in part, rescission and/or compensatory, treble, and punitive damages.

On December 28, 1999, Bill Swad filed a motion pursuant to R.C. 2711.02 to stay the proceedings and refer the case to arbitration. Attached to the motion was a copy of the signed purchase order from the sale of the automobile to Battle. The purchase order contained an arbitration clause. Battle filed a memorandum contra Bill Swad's motion to stay the proceedings, and Bill Swad filed a reply.

On February 24, 2000, the trial court filed a decision and entry denying Bill Swad's motion to stay the proceedings and refer the matter to arbitration. Bill Swad (hereinafter appellant) has appealed to this court, assigning the following error for our consideration:

"The trial court erred in holding that claims under the Ohio Consumer Sales Practices Act may be litigated notwithstanding contractual language requiring arbitration."

■ The first issue we address is whether the trial court's February 24, 2000 entry denying appellant's motion is a final appealable order. As indicated above, appellant's motion was brought pursuant to R.C. 2711.02. R.C. 2711.02 addresses the trial court's ability, upon a party's application, to stay an action that is subject to a written arbitration agreement. R.C. 2711.02 states:

"An order under this section that grants or denies a stay of a trial of any action pending arbitration * * * is a final order and may be reviewed, affirmed, modified, or reversed on appeal pursuant to the Rules of Appellate Procedure * * *."

In light of the above language, the trial court's February 24, 2000 entry denying appellant's motion to stay pursuant to R.C. 2711.02 is a final appealable order.

■ Turning to the merits of appellant's appeal, appellant contends that under R.C. 2711.02, a trial court must stay an action if it falls under an arbitration agreement. R.C. 2711.02 states:

"If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending,

upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement * * *."

■ We note first that arbitration is encouraged as a method to settle disputes and that a presumption favoring arbitration arises when the claim in dispute falls within the scope of the arbitration provision. *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 471, 700 N.E.2d 859, 865. The arbitration provision in the case at bar states, in pertinent part:

"ARBITRATION. ANY CONTROVERSY OR CLAIM IN EXCESS OF $1,000 ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE PURCHASE, SALE, OR SERVICING OF THE VEHICLE(S) DESCRIBED HEREIN, SHALL BE ·DETERMINED BY ARBITRATION IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION. * * *"

The arbitration provision in the case at bar is very broad in its scope and applies not only to claims arising out of the purchase order but also to any claim arising out of the purchase or sale of the vehicle at issue. Thus, it appears that the claims of Battle (hereinafter appellee) would fall under the arbitration provision. However, the trial court denied appellant's application to stay the proceedings, stating that the action involved the common-law remedy of rescission based on fraud and the CSPA. The trial court concluded, therefore, that under R.C. 2711.01,[1] appellee was entitled to proceed upon her rescission claim and that if any claims remained after such was determined, the parties could submit those claims to arbitration.

Appellee contends the trial court's conclusion was correct because the purchase order containing the arbitration clause does not control the case. Appellee points out that she has claimed fraudulent inducement based on actions that occurred prior to the signing of the purchase order and that she has sought rescission of the contract. Both appellee and the trial court have cited this court's decision in *Legue v. Bill Swad Chevrolet, Inc.* (Aug. 20, 1992), Franklin App. No. 92AP–390, unreported, 1992 WL 208922, in support of the conclusion that the purchase order (and arbitration clause contained therein) is not applicable.

In *Legue,* this court reversed the trial court's grant of a motion to dismiss for failure to arbitrate. The plaintiffs had sought, in part, rescission of an agreement

---

1. R.C. 2711.01(A) states, in pertinent part:

"A provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract * * * shall be valid * * * except upon grounds that exist at law or in equity for the revocation of any contract."

to purchase an automobile from the defendant. The agreement contained an arbitration clause. This court noted that the plaintiffs could seek rescission on the common-law basis of fraud and pursuant to statutory authority under the CSPA. *Id.* at 3. This court stated that by requesting rescission as a remedy, the plaintiffs were not seeking enforcement of their rights or remedies under the contract. *Id.* Because the remedy of rescission was unrelated to the contract, the matter could not be submitted to arbitration pursuant to the arbitration clause unless the trial court first made a legal determination that the contract was valid and enforceable. *Id.* The trial court, therefore, improperly sent all issues to arbitration without first addressing the validity of the contract, which included inquiries into the validity of the arbitration clause embodied therein, and determining whether there was fraud in the inducement of the contract. *Id.* at 3–4.

It appears that appellee would have this court rely on *Legue* in support of a conclusion that a motion for stay pursuant to R.C. 2711.02 may not be granted when a plaintiff, in a case involving a contract with an arbitration clause, asserts fraudulent inducement and/or requests rescission as to the underlying contract. However, for the reasons that follow, appellee's reliance upon *Legue* is misplaced.

*Legue* was decided in 1992. Since then, the Supreme Court of Ohio has addressed the essential issue involved in *Legue*. In *ABM Farms, Inc. v. Woods* (1998), 81 Ohio St.3d 498, 692 N.E.2d 574, the plaintiff brought a fraud claim arising out of an agreement that created a brokerage account. Such agreement contained an arbitration clause. The defendants filed a motion to stay pursuant to R.C. 2711.02. The trial court denied the motion on the basis the plaintiff had been fraudulently induced into signing the agreement, which contained an arbitration clause. *Id.* at 500, 692 N.E.2d at 576–577.

The Supreme Court indicated that the issue before it was whether a claim that a contract containing an arbitration clause was induced by fraud can defeat an R.C. 2711.02 motion to compel arbitration. *Id.* at 500–501, 692 N.E.2d at 576–577. The Supreme Court held:

■ "To defeat a motion for stay brought pursuant to R.C. 2711.02, a party must demonstrate that the arbitration provision itself in the contract at issue, and not merely the contract in general, was fraudulently induced." *Id.* at syllabus.

■■ In so holding, the Supreme Court noted that R.C. 2711.01(A), quoted above, generally acknowledges that an arbitration clause is, in effect, a contract within a contract, subject to revocation on its own merits. *Id.* at 501, 692 N.E.2d at 577. Because the arbitration clause is a separate entity, an alleged failure of the contract in which it is contained does not affect the arbitration provision itself. *Id.* at 502, 692 N.E.2d at 577–578. Rather, the arbitration clause remains

the vehicle by which the legitimacy of the remainder of the contract is decided. *Id.*

The Supreme Court went on to find that there was no evidence the defendant discussed arbitration at all with the plaintiff, much less made a representation about it. *Id.* Indeed, arbitration was never brought up. *Id.* As there was no evidence of fraudulent inducement of the arbitration provision, the Supreme Court held that the trial court erred in denying the motion for stay. *Id.* at 504, 692 N.E.2d at 579–580.

Given the holding in *ABM Farms*, one cannot rely on *Legue* for the proposition that an R.C. 2711.02 motion for stay can be defeated by an assertion that the contract in general was fraudulently induced and by requesting rescission thereof. We decline to overrule *Legue*, however, as it does indicate that a trial court should inquire into the validity of the arbitration provision embodied within the contract. *Legue* at 3–4. To the extent *Legue* emphasizes the validity of the arbitration provision itself, it is in conformity with the Supreme Court's holding in *ABM Farms*.

Soon after *ABM Farms* was decided, the Supreme Court decided *Williams v. Aetna Fin. Co., supra.* The Supreme Court upheld the trial court's denial of a motion to stay and to compel arbitration. In so holding, the Supreme Court stated that the record clearly would support a finding that the arbitration clause violated principles of equity, given all the facts and circumstances of the case, and that the trial court, in essence, had made a determination that the arbitration clause was invalid on grounds of unconscionability. *Id.*, 83 Ohio St.3d at 472, 700 N.E.2d at 865–866. It was noted that the plaintiff had submitted an affidavit to support her challenge to the specific validity of the arbitration clause. *Id.* The Supreme Court further noted that the presumption in favor of arbitration should be substantially weaker in a case such as the one before it, when the arbitration clause itself appears to be adhesive in nature, and there is considerable doubt that any true agreement to submit disputes to arbitration ever existed. *Id.* at 473, 700 N.E.2d at 866–867.

A careful reading of *Williams* in light of *ABM Farms* reveals a tension between the holdings. The broad holding contained in the syllabus of *ABM Farms* indicates that a party to a contract that contains an arbitration provision cannot avoid arbitration unless the party can demonstrate that the arbitration provision itself was the result of fraud in the inducement, separate from the fraud that caused the party to enter into the contract. The party claiming the fraud in *ABM Farms* was a private person who changed investment accounts to a new broker—a consumer of financial services.

The holding in *Williams*, then, indicates that exceptions to the general rule set forth in *ABM Farms* are to be made when the arbitration clause violates "principles of equity." *Williams* at 472, 700 N.E.2d at 866. Indeed, the Supreme Court cited R.C. 2711.01(A), which states that an arbitration provision is enforceable except on grounds that exist at law *or in equity* for the revocation of any contract. *Id.* at 471, 700 N.E.2d at 865. Clearly, a majority of the Supreme Court found the facts in *Williams* supported a finding of unconscionability, and, for this reason, the majority upheld the trial court's refusal to enforce the arbitration clause.

Since *ABM Farms* included allegations of fraud, apparently the *Williams* case holds that in certain cases of egregious fraud, an arbitration provision will not be enforced. Additional guidance from the Supreme Court of Ohio as to the exception to the syllabus law set forth in *ABM Farms* would be helpful for both the trial courts and the intermediate appellate courts. Until such guidance is forthcoming, we feel compelled to do a case-by-case analysis to determine if the arbitration clause violates principles of equity in a given case.

In *Williams*, an elderly woman was preyed upon by a door-to-door salesman of home repair services who induced her to obtain two loans from Aetna Finance Company for work that was never done. The loan agreements included an agreement to arbitrate. Three members of the Supreme Court of Ohio would have enforced the arbitration clause. The four-member majority found that the arbitration clause was unconscionable and hence unenforceable. The majority opinion did not set forth detailed guidance as to when an arbitration clause should be found to be enforceable, but cited with approval *Patterson v. ITT Consumer Fin. Corp.* (1993), 14 Cal.App.4th 1659, 18 Cal.Rptr.2d 563. The *Patterson* court determined that small consumer loans, made on preprinted forms by a party with much greater bargaining power, were unconscionable and adhesive in nature. *Williams* at 472–473, 700 N.E.2d at 865–867.

The facts in the case at bar indicate the possible existence of a particularly egregious situation. According to her complaint, appellee specifically inquired as to whether the used car she was considering buying had been wrecked previously. The salesperson allegedly lied about the vehicle's history, concealing the fact that the vehicle had been wrecked twice—once seriously while being operated by appellant's employee. The vehicle had been repaired by appellant using a substance to conceal some of the damages rather than repair it.

Assuming appellee's allegations are true, a company with far superior knowledge of the situation concealed very damaging information about its product from a far less knowledgeable consumer in a transaction which is among the most expensive transactions engaged in by the average consumer. Further, the

product purchased is of critical importance to the consumer. If the vehicle purchased fails to perform its basic function of providing reliable transportation, the impact on the consumer can be devastating, especially if the consumer is not a wealthy person. Transactions involving modern-day necessities such as transportation deserve especially close scrutiny before an arbitration clause is enforced by the courts.

In the case at bar, the trial court denied appellant's motion for a stay on the grounds the case involved the common-law remedy of rescission based upon fraud and violation of the CSPA. As indicated above, such fraud went to the underlying contract in general. Given the holding in *ABM Farms,* appellee's fraudulent inducement claims cannot be the basis for denying the stay. However, appellee also asserted below that *Williams* applied and that the arbitration provision was unconscionable. The trial court never reached this issue, as it denied appellant's motion on other grounds. The trial court should have the first opportunity to address the existence or nonexistence of unconscionability.

In light of the above, this cause must be remanded to the trial court to conduct further inquiry into the issue of whether or not the arbitration clause is unconscionable. For this reason alone, appellant's assignment of error is sustained.

In summary, appellant's assignment of error is sustained, and this cause is remanded to the trial court with instructions to conduct further proceedings consistent with this opinion.

*Judgment vacated*
*and cause remanded with instructions.*

PEGGY BRYANT and GLASSER, JJ., concur.

GEORGE M. GLASSER, J., retired, of the Sixth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.