{¶ 15} I respectfully dissent.
 {¶ 16} R.C. 2711.02(C) provides that an order granting or denying a "stay of a trial of any action pending arbitration" is a final order capable of immediate review. Despite the statute's use of the term trial when referencing a motion to stay, this court, as well as other courts, has equated an order emanating from a motion to stay proceedings with a motion to stay trial. See, e.g., Thornton v. Haggins, Cuyahoga App. No. 83055, 2003-Ohio-7078. The majority acknowledges as much when it references Oncology Div. of UIMA v. Community Ins. Co., 1st Dist. No. C-020056, 2002-Ohio-4800, yet it finds the order that is the subject of this appeal to be non-final.
 {¶ 17} A review of the record reveals that Morgan Stanley filed several motions to compel arbitration in the two cases before they were consolidated. The first motion was filed in Case No. CV-502459 on July 8, 2003 and was captioned as a motion to compel arbitration. Within the body of that motion was a request for an order "compelling arbitration and staying the instant proceedings * * *." It is true that Morgan Stanley thereafter filed a motion to stay discovery in Case No. CV-502459 on July 17, 2003 and an alternative motion to "stay proceedings" in Case No. CV-507811 on October 27, 2003. After the two cases were consolidated, Morgan Stanley filed yet another motion, which was captioned as a motion to compel arbitration and stay discovery. Within the body of that motion, however, Morgan Stanley specifically incorporated all arguments contained in their motions filed July 8, 2003 and October 27, 2003, both which sought an order staying the "proceedings." It is well established that the substance of the motion, and not its caption, determines its operative effect. See Nethery v. State Farm Ins. Cos.
(2001), 146 Ohio App.3d 282, 283, citing Morris v. Children'sHosp. Med. Ctr. (1991), 73 Ohio App.3d 437, 440-441; see, also,Lungard v. Bertram (1949), 86 Ohio App. 392, 395. Because the court ordered discovery to continue and set the motion to compel for hearing, I find that it effectively denied Morgan Stanley's request to stay proceedings, making that order final and capable of immediate review under R.C. 2711.02(C).
 {¶ 18} In that event, I would find the arbitration provision at issue unenforceable. Although arbitration agreements are generally favored in the law as a less costly and more efficient method of settling disputes, the presumption favoring arbitration arises only when the claim in dispute falls within the scope of the arbitration provision. See Gerig v. Kahn,95 Ohio St.3d 478, 2002-Ohio-2581, at ¶ 20; Kelm v. Kelm (2001),92 Ohio St.3d 223, 225. An arbitration agreement is generally viewed as an expression that the parties agree to arbitrate disagreements within the scope of the agreement, and, with limited exceptions, such an agreement is to be upheld just as any other contract. SeeCouncil of Smaller Enterprises v. Gates, McDonald Co. (1998),80 Ohio St.3d 661, 668; see, also, Williams v. Aetna Fin. Co.
(1998), 83 Ohio St.3d 464, 471.
 {¶ 19} Under R.C. 2711.02, a trial court is required to stay proceedings instituted in its court when a party demonstrates that an agreement exists between the parties to submit the issue to arbitration. In order for an arbitration agreement to be enforceable, however, the agreement must apply to the disputed issue and the parties must have agreed to submit that particular issue or dispute to arbitration. Harmon v. Philip Morris Inc.
(1997), 120 Ohio App.3d 187, 189; Ervin v. American FundingCorp. (1993), 89 Ohio App.3d 519; see, also, Maestle v. BestBuy Co., 100 Ohio St.3d 330, 2003-Ohio-6465, at ¶ 17; ABM Farmsv. Woods (1998), 81 Ohio St.3d 498, 500.
 {¶ 20} Here, Morgan Stanley argues that Marks agreed to arbitrate any claims against it under two separate documents: the Uniform Application for Securities Industry Registration or Transfer and the Account Executive Employment Agreement.
Uniform Application for Securities Industry Registration
 {¶ 21} At the commencement of his employment with Morgan Stanley's predecessor, Dean Witter, Marks completed an application to be registered as a securities representative. The registration application, entitled "Uniform Application for Securities Industry Registration or Transfer" (hereafter referred to as "Securities Application") provided, among other things, that Marks "agreed to arbitrate any dispute, claim or controversy that may arise between [him] and [his] firm * * * that is required to be arbitrated under the rules, constitutions or by-laws of the organizations indicated in Item 10 * * *." Item 10 of the Securities Application lists several organizations, including the National Association of Securities Dealers ("NASD"). The applicant checks the appropriate box of the organization from which he or she seeks registration. It is Morgan Stanley's position that Marks registered with NASD as part of the application process and is, therefore, bound by the arbitration provision set forth in the NASD Code of Arbitration Procedure, which provides:
 {¶ 22} "This Code of Arbitration Procedure is prescribed and adopted pursuant to Article VII, Section 1(a)(iv) of the By-Laws of the Association for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member * * *."
 {¶ 23} Marks, on the other hand, maintains that the NASD rules and regulations are inapplicable because Item 10 of Marks' Securities Application is blank, meaning that Marks' application cannot be construed to bind him to the arbitration provision set forth by NASD. Morgan Stanley argues in opposition that being registered with this entity was a requirement of employment, one that Marks does not dispute.
 {¶ 24} Contrary to Morgan Stanley's argument, I find no evidence in the record indicating that Marks was registered with NASD. The Securities Application is silent on this issue. Moreover, Marks' second amended complaint does not contain an assertion that Marks is registered with NASD. To be sure, the complaint sets forth that Marks is a "successful and coveted financial planner and advisor," that he used his "best efforts to discharge his duties to Dean Witter" and that he was coerced "to steer clients to invest funds." Without more, I cannot infer or assume by these averments that Marks was required to be a registered member of one of the organizations listed in Item 10 of the Securities Application. Although it may, in fact, be true that Marks could not discharge his duties as an account executive without such registration, there is no evidence in the record indicating that he was so registered and, therefore, bound by the arbitration agreement referenced in paragraph five on page four of the Securities Agreement.
 {¶ 25} Consequently, I would find that Morgan Stanley is not entitled to a stay of proceedings on the basis of the arbitration agreement referenced in the Securities Application.
Account Executive Employment Agreement
 {¶ 26} Marks executed an Account Executive Employment Agreement ("Employment Agreement") at the commencement of his employment with Morgan Stanley's predecessor, Dean Witter. The Employment Agreement contained 11 paragraphs and addressed several employmentrelated issues, including, among others, the treatment of confidential information, unfair competition, Dean Witter's right to injunctive relief and the termination of employment. The Employment Agreement also contained the following arbitration provision:
 {¶ 27} "Any controversy or claim arising out of or relating to this Agreement, or its breach, will be settled by arbitration before either the National Association of Securities Dealers, Inc.[,] or the New York Stock Exchange, Inc., as Dean Witter may elect, in accordance with their respective rules, and judgment upon the award entered by the arbitrator(s) may be entered in any court having jurisdiction thereof. * * *"
 {¶ 28} Morgan Stanley, as the successor in interest to Dean Witter, argues that this provision within the Employment Agreement obligates Marks to submit his employment-related claims to arbitration. Marks, on the other hand, maintains that this provision is narrow in scope and relates only to the issues addressed in the Employment Agreement; namely, provisions for treatment of confidential information, unfair competition and injunctive relief. Because Marks' claims do not come within any of these provisions, Marks argues that he cannot be compelled to submit the claims raised in his complaint to arbitration. I would agree with Marks.
 {¶ 29} Ordinarily, the existence of a contract containing a broad arbitration provision creates a presumption that the parties agreed to arbitrate all disputes unless expressly excluded or unless there exists evidence of a purpose to exclude the claim from arbitration. See Crawford v. Ribbon Tech. Corp.
(2000), 138 Ohio App.3d 326, 333, citing Internatl. Bhd. ofTeamsters, Chauffeurs, Warehousemen Helpers of America, LocalUnion 20 v. Toledo (1988), 48 Ohio App.3d 11, 13; see, also,Battle v. Bill Swad Chevrolet (2000), 140 Ohio App.3d 185, 188. Here, the arbitration provision at issue is indeed broad, encompassing any claim or controversy arising out of or related to the Employment Agreement.
 {¶ 30} Notwithstanding this broad language, however, the agreement to arbitrate is limited to controversies or claims arising out of or related to that particular agreement, which itself is limited to issues of unfair competition, the treatment of confidential information or Morgan Stanley's right to injunctive relief. Marks raised no such claims and should not now be required to arbitrate claims he did not agree to arbitrate. As such, I would find that Morgan Stanley is also not entitled to a stay of proceedings on the basis of the arbitration provision contained in the Employment Agreement.
 {¶ 31} I would affirm the judgment of the trial court.