[Cite as *Pinnell v. Cugini & Cappoccia Builders, Inc.*, 2014-Ohio-669.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Chad Pinnell et al., | : | |
| Plaintiffs-Appellees, | : | |
| | : | No. 13AP-579 |
| v. | : | (C.P.C. No. 09CV-9496) |
| Cugini & Cappoccia Builders, Inc. et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on February 25, 2014

*Anthony Law, LLC, Michael J. Anthony* and *Andrew H. Stevens*, for appellees.

*Lane, Alton & Horst, LLC, Mary Barley McBride* and *Christopher R. Pettit*, for appellants.

APPEAL from the Franklin County Court of Common Pleas

O'GRADY, J.

{¶ 1} Defendants-appellants, Cugini & Cappoccia Builders, Inc. ("C&C"), Denis King, and Paul Cugini (collectively "appellants"), appeal from a judgment of the Franklin County Court of Common Pleas denying their motion to stay this action pending mediation and arbitration on claims brought by plaintiffs-appellees, Chad Pinnell, David Cavanaugh, and PinnellEstate, LLC. For the following reasons, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellees filed suit against appellants on June 24, 2009, and made the following allegations. Pinnell was a commercial real estate agent specializing in leasing space to medical professionals and was the sole member of PinnellEstate, LLC. Cugini and King were principals of C&C. Around Spring 2007, appellees, King, and Cugini

discussed the development of two properties in Columbus, Ohio. This case involves what the parties refer to as the Dillmont Property.

{¶ 3} According to the complaint, King, Cugini, and appellees agreed to build a medical building on the Dillmont Property. King and Cugini, through C&C, would secure financing and construct the building. Pinnell/PinnellEstate would secure leases from medical professions for the building, and Cavanaugh would handle general operations. Pinnell/PinnellEstate and Cavanaugh were to each own a 25 percent share of the venture. King filed Articles of Organization for Ufficio, LLC, which was created as a holding company for the Dillmont Property. Pinnell/PinnellEstate, Cavanaugh, and C&C entered into an operating agreement for this entity, which appellees attached to the complaint. Though not mentioned in the complaint, the attachment is evidently a revised agreement since King and Cugini, not C&C, were listed as members on the original agreement. Additionally, the attached agreement does not mention PinnellEstate and refers to "Ufficio, LTD.," not "Ufficio, LLC."

{¶ 4} The complaint further alleged Pinnell and his LLC began to secure leases, and, after construction of the building was complete, the Dillmont Property was sold in May 2008 for net proceeds in excess of $800,000. However, the closing HUD incorrectly named C&C as the seller, so the proceeds went to King and Cugini. Cavanaugh and Pinnell/PinnellEstate did not receive their full share of the proceeds. Therefore, appellees alleged C&C breached the operating agreement and alleged, among other things, that appellants had engaged in civil conspiracy.

{¶ 5} On July 29, 2009, appellants filed their answer and C&C filed a counterclaim against Pinnell and Cavanaugh for breach of the operating agreement. Specifically, C&C alleged Pinnell and Cavanaugh each failed to make an initial capital contribution of $20,000 in accordance with the agreement. C&C sought damages for this breach.

{¶ 6} The parties engaged in the discovery process. In October 2009, C&C filed a motion to quash subpoenas and motion for a protective order because appellees issued subpoenas to two banks seeking documents that purportedly contained C&C's trade secrets. The trial court later issued an agreed protective order. In May 2010, appellees filed a motion to compel C&C to respond to their discovery requests and a motion to add

parties and claims to the lawsuit. Appellants opposed both motions. In addition, appellees took the depositions of five people, including Cugini and King, and appellants took the depositions of Pinnell and Cavanaugh.

{¶ 7} On July 14, 2010, appellants filed a motion for summary judgment or, in the alternative, a motion to stay proceedings pending mediation and arbitration. Appellants argued they were entitled to summary judgment on all of appellees' claims. In part, appellants claimed the trial court should find the operating agreement terminated because Pinnell and Cavanaugh materially breached the agreement by failing to pay their initial capital contribution in a reasonable time and execute personal guarantees on a construction loan. Appellants argued that if the trial court found genuine issues of material fact existed for trial, the court should enforce Section 10.4 of the operating agreement and stay the proceedings pending mediation and arbitration.

{¶ 8} Section 10.4 of the operating agreement provides:

> ***Mediation and Arbitration.*** Any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to mediation as a condition precedent to arbitration. The Members shall endeavor to resolve claims, disputes, and other matters in question between them by mediation which, unless the Members mutually agree otherwise, shall be in accordance with the rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other Members and with the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order. The Member losing the mediation and/or arbitration shall be responsible for the total costs of the proceedings, including attorney's fees for all Members and any and all mediation and/or arbitration fees. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

(R. 3, Complaint exhibit C, 25.)

{¶ 9} In response, appellees argued appellants waived arbitration. Appellants countered that Section 10.3(f) of the operating agreement required any waiver be in

writing, and they never executed such a writing. Section 10.3(f) of the operating agreement states:

> ***Construction.*** The following shall be applicable in interpreting and construing the terms of this Agreement:
>
> * * *
>
> (f) No provision of this Agreement shall be deemed to have been waived unless such waiver is contained in a written notice given by the party granting such waiver to the party claiming such waiver and no such waiver shall be deemed to be a waiver of any other or further obligation or liability of the other party or parties in whose favor the waiver was given or a waiver by any party not executing such waiver of any of its rights.

(Exhibit C, 24.)

{¶ 10} The trial court referred the matter to a magistrate for a ruling on the outstanding motions, a mediation conference, and trial. Regarding the motion to stay, the magistrate found Section 10.4 of the operating agreement did not make mediation or arbitration mandatory. In the alternative, the magistrate found appellants waived any right to compel mediation or arbitration despite the presence of Section 10.3(f) in the operating agreement. The magistrate explained:

> In *Dynamark Security Centers, Inc. v. Charles*, 9th Dist. No. 21254, 2003-Ohio-2156, ¶18, the Court held that even when an agreement contains an anti-waiver clause, the law protects against abuse of the right to arbitrate "by providing that, when a party files suit, proceeds through the litigation process, and 'does not properly raise the arbitration provision of a contract before the trial court, [that party] is deemed to have waived arbitration.' "

(R. 138, Magistrate's Decision, 4-5.) The magistrate noted appellants answered the complaint without seeking arbitration and filed counterclaims alleging appellees breached the operating agreement. "The parties then engaged in extensive discovery, including, according to [appellees], production of thousands of documents, the taking of eight depositions, and the filing of motions related to discovery." (Magistrate's Decision, 4.) Appellants did not seek a stay for mediation and arbitration until after "almost thirteen

months of litigation."  (Magistrate's Decision, 4.)  Thus, the magistrate found appellants "asserted claims without seeking a stay, delayed in requesting a stay, participated in the litigation, and engaged in acts inconsistent with arbitration that would prejudice Plaintiffs."  (Magistrate's Decision, 5.)  The magistrate denied the motion to stay and motion for summary judgment.

{¶ 11} In ruling on appellants' objections to the magistrate's decision, the trial court disagreed with the magistrate's interpretation of Section 10.4 of the operating agreement and found that provision made arbitration mandatory.  Nonetheless, the trial court agreed with and adopted the magistrate's finding that appellants waived any right to compel mediation or arbitration under the operating agreement.  Thus, the trial court denied the motion to stay.  The trial court also found the magistrate properly denied appellants' motion for summary judgment.

## II.  ASSIGNMENT OF ERROR

{¶ 12} Appellants appeal and present one assignment of error for our review:

> The Trial Court Abused its Discretion and Committed Reversible Error by Denying Appellants Cugini & Cappoccia Builders, Inc., Denis King and Paul Cugini's Motion to Stay Further Proceedings Pending Mediation and Arbitration.

## III.  PRELIMINARY MATTERS

{¶ 13} Initially, we note neither party appeals the trial court's finding that Section 10.4 of the operating agreement makes arbitration mandatory.  Also, the operating agreement only makes mediation a "condition precedent to arbitration."  Thus, like the parties, magistrate, and trial court, we will focus our analysis on arbitration, not mediation.  Additionally, we note the complaint appears to only raise a breach of contract claim against C&C and that claim is premised on the revised operating agreement. Likewise, only C&C filed a counterclaim against appellees; Cugini and King did not. Nonetheless, in the proceedings on the motion to stay, the parties, magistrate, and trial court acted as though: (1) the complaint alleged a breach of contract action against all three appellants, (2) all three appellants filed breach of contract counterclaims, and (3) all three appellants had a right to arbitration under the operating agreement.  Because the parties do not raise the issue, we will follow suit.  Presumably, any breach of contract claims involving Cugini and King are based on the original operating agreement because

they were not listed as members to the revised agreement. However, because Sections 10.3 and 10.4 are the same in the original and revised versions of the agreement, for the sake of simplicity, our analysis will simply refer to the "operating agreement."

## IV. DISCUSSION

{¶ 14} Under their sole assignment of error, appellants contend the trial court abused its discretion by denying their motion to stay pending mediation and arbitration.

{¶ 15} "Both the Ohio General Assembly and Ohio courts have expressed a strong public policy favoring arbitration." *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, ¶ 15, citing R.C. Chapter 2711, *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶ 27, and *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471 (1998). " 'Arbitration is favored because it provides the parties thereto with a relatively expeditious and economical means of resolving a dispute.' " *Kelm v. Kelm,* 68 Ohio St.3d 26, 29 (1993), quoting *Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 712 (1992). "Arbitration also has the additional benefit of unburdening crowded court dockets." *Hayes* at ¶ 15, citing *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 83 (1986). "In light of the strong presumption favoring arbitration, all doubts should be resolved in its favor." *Id.*, citing *Ignazio v. Clear Channel Broadcasting, Inc.*, 113 Ohio St.3d 276, 2007-Ohio-1947, ¶ 18.

{¶ 16} "The General Assembly has endorsed the strong policy in favor of arbitration of disputes in R.C. 2711.01(A), which provides that an arbitration agreement 'shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.' " *Hayes* at ¶ 16. R.C. 2711.02 provides for enforcement of an arbitration agreement. A party to such an agreement may obtain a stay of litigation in favor of arbitration under R.C. 2711.02(B), which states:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

Moreover, an order under R.C. 2711.02(B) that grants or denies a stay of a trial pending arbitration "is a final order and may be reviewed, affirmed, modified, or reversed on appeal pursuant to the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code."  R.C. 2711.02(C).

{¶ 17}  Our standard of review for a R.C. 2711.02(B) order depends on the nature of the issues involved.  *See Dispatch Printing Co. v. Recovery Ltd. Partnership*, 10th Dist. No. 10AP-353, 2011-Ohio-80, ¶ 17.  Here, the issue is whether appellants waived the right to arbitrate.  "The right to arbitration may be waived just like any other contractual right." *Id.* at ¶ 19, citing *Murtha v. Ravines of McNaughton Condominium Assn.*, 10th Dist. No. 09AP-709, 2010-Ohio-1325, ¶ 20.  " ' "[T]he question of waiver is usually a fact-driven issue and an appellate court will not reverse" the trial court's decision "absent a showing of an abuse of discretion." ' "  *Morris v. Morris*, 189 Ohio App.3d 608, 2010-Ohio-4750, ¶ 17 (10th Dist.), quoting *Murtha* at ¶ 20, quoting *ACRS, Inc. v. Blue Cross & Blue Shield of Minnesota*, 131 Ohio App.3d 450, 456 (8th Dist.1998).  The phrase "abuse of discretion" implies the trial court's attitude is arbitrary, unreasonable or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 18}  "A party asserting waiver must prove that the waiving party knew of the existing right to arbitrate and, based on the totality of the circumstances, acted inconsistently with that known right."  *Dispatch Printing Co.* at ¶ 21, citing *Murtha* at ¶ 21.  "In determining whether the totality of the circumstances supports a finding of waiver, a court may consider such factors as: (1) whether the party seeking arbitration invoked the court's jurisdiction by filing a complaint or claim without first requesting a stay; (2) the delay, if any, by the party seeking arbitration to request a stay; (3) the extent to which the party seeking arbitration has participated in the litigation; and (4) whether prior inconsistent acts by the party seeking arbitration would prejudice the non-moving party."  *Id.*, citing *Tinker v. Oldaker*, 10th Dist. No. 03AP-671, 2004-Ohio-3316, ¶ 20. "Waiver attaches where there is active participation in a lawsuit evincing an acquiescence to proceeding in a judicial forum."  *Tinker* at ¶ 21.

{¶ 19}  Initially, appellants claim the trial court erred when it found they waived arbitration because, under Section 10.3(f) of the operating agreement, they could only waive arbitration in writing, and they did not.  However, as the magistrate and trial court

implicitly recognized "a written waiver provision, just like any other provision in a contract, can be waived by actions of the parties." *Snowville Subdivision Joint Venture Phase I v. Home S. & L. of Youngstown, Ohio*, 8th Dist. No. 96675, 2012-Ohio-1342, ¶ 17, citing *Glenmoore Builders, Inc. v. Smith Family Trust*, 9th Dist. No. 24299, 2009-Ohio-3174, ¶ 41. Appellants also complain the trial court "arbitrarily chose to enforce certain provisions of the Operating Agreement that benefited [a]ppellees and, at the same time, chose to not enforce other provisions, including Section 10.3(f) and Section 10.4." (Appellants' brief, 23.) They contend the trial court should have enforced all or none of the operating agreement. But the trial court's finding that appellants waived the right to arbitrate did not somehow terminate the remainder of the operating agreement.

{¶ 20} Next, appellants implicitly concede they knew about their right to arbitrate, but appellants maintain they did not act inconsistently with that known right. However, appellants invoked the trial court's jurisdiction by filing a counterclaim for breach of the operating agreement without first requesting a stay. Additionally, they did not request a stay until over 12 months after appellees filed their complaint and over 11 months after appellants filed their answer and counterclaim. Appellants complain that, in other cases Ohio courts have enforced arbitration provisions even though a party delayed for a similar amount of time. This argument ignores the fact that no one factor is controlling in a totality of the circumstances analysis.

{¶ 21} Appellants also suggest they should not be penalized for the delay in requesting a stay because they faced a "Catch-22" situation. (Appellants' brief, 20.) Appellants believed appellees "failed to live up to their contractual obligations" to the point the operating agreement was "unenforceable." (Appellants' brief, 19-20.) According to appellants, if they filed a motion to stay immediately after appellees initiated this lawsuit, appellants would have "had to take the untenable position that the Operating Agreement was enforceable in one respect and unenforceable in all other respects." (Appellants' brief, 20.) So instead of filing a motion to stay, they chose to "proceed with some limited discovery on the enforceability of the Operating Agreement to determine if there was any basis upon which to find that the * * * [a]greement was enforceable in spite of the [a]ppellees' breaches." (Appellants' brief, 20.) Appellants believed if they found such a basis, they could rely on Section 10.3(f) and compel arbitration.

{¶ 22} We find this argument unpersuasive. In their motion for summary judgment, appellants argued appellees materially breached the contract such that it had terminated. However, "when a material breach occurs, the nonbreaching party 'may, at his option, elect to rescind the contract, or continue it in force and sue for damages for the breach.' " *Meyer v. Chieffo*, 193 Ohio App.3d 51, 2011-Ohio-1670, ¶ 32 (10th Dist.), quoting *Bryan Publishing Co. v. Kuser*, 3d Dist. No. 7-07-17, 2008-Ohio-2610, ¶ 18. Here, appellants elected to sue for damages in their counterclaim. But even if they had requested rescission, "R.C. 2711.01(A) generally acknowledges that an arbitration clause is, in effect, a contract within a contract, subject to revocation on its own merits." *Gordon v. OM Fin. Life Ins. Co.*, 10th Dist. No. 08AP-480, 2009-Ohio-814, ¶ 9, citing *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 501 (1998), and *Battle v. Bill Swad Chevrolet, Inc.*, 140 Ohio App.3d 185 (10th Dist.2000). "Because the arbitration clause is a separate entity, an alleged failure of the contract in which it is contained does not affect the arbitration provision itself." *Id.*, citing *Battle* at 189, citing *ABM Farms, Inc.* at 501. *See generally Tomovich v. USA Waterproofing & Found. Servs., Inc.*, 9th Dist. No. 07CA009150, 2007-Ohio-6214, ¶ 18 (Noting if court accepted party's argument that arbitration clause could not be enforced because the party rescinded the contract at issue, "any party who asserts that he or she has rescinded a contract could avoid enforcement of an otherwise valid arbitration agreement.").

{¶ 23} In addition, despite their claims to the contrary, appellants have extensively participated in this litigation. Appellants engaged in the discovery process. They took depositions, had their depositions taken, and admittedly propounded written discovery requests. They invoked the court's assistance in discovery matters by filing a motion to quash subpoenas and motion for a protective order. They filed an initial and supplemental disclosure of witnesses. They challenged appellees' motion to compel discovery and motion to add parties and claims to the lawsuit. Moreover, they filed a motion for summary judgment and asked the court to rule in their favor on the merits of appellees' claims. Appellants filed the motion to stay less than two and one-half months before the September 27, 2010 trial date and only as an alternative in the event they received an unfavorable ruling on the summary judgment motion. Such conduct amounts to forum shopping. *Am. Gen. Fin. v. Griffin*, 8th Dist. No. 99088, 2013-Ohio-2909, ¶ 22.

{¶ 24} Finally, appellants argue arbitration would not prejudice appellees. In response, appellees argue arbitration will "only delay this case longer, causing both parties to incur more legal fees and wasted resources." (Appellees' brief, 31.) Appellees' claim is somewhat vague. Nonetheless, even without a specific example of prejudice, we conclude the trial court did not abuse its discretion in finding, under the totality of the circumstances, appellants acted inconsistently with their right to arbitrate. The record supports the conclusion that appellants took an active role in this lawsuit, evincing their acquiescence to proceeding in a judicial forum, and only wanted arbitration in the event the trial court issued an unfavorable ruling on their motion for summary judgment. Appellants' assignment of error is overruled.

## V. CONCLUSION

{¶ 25} For the foregoing reasons, we overrule appellants' sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and CONNOR, JJ., concur.