[Cite as *Smith v. Nationwide Mut. Ins. Co.*, 2018-Ohio-3758.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Renard L. Smith, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 17AP-245 |
| v. | : | (C.P.C. No. 16CV-9586) |
| Nationwide Mutual Insurance Company, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on September 18, 2018

**On brief:** *Caryn Groedel & Associates, Co., LPA, Matthew S. Grimsley,* and *Caryn M. Groedel,* for appellant. **Argued:** *Matthew S. Grimsley.*

**On brief:** *Bricker & Eckler LLP, Quintin F. Lindsmith,* and *Victoria Flinn McCurdy,* for appellee. **Argued:** *Quintin F. Lindsmith.*

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Plaintiff-appellant, Renard L. Smith, filed suit against defendant-appellee, Nationwide Mutual Insurance Company ("Nationwide"), in the Franklin County Court of Common Pleas, alleging claims arising from the parties' unsuccessful efforts to position Smith as a Nationwide insurance agent. Nationwide filed a motion to stay the proceedings based on an arbitration clause in an agreement between the parties. Smith appeals from the trial court's decision granting the motion to stay. For the following reasons, we affirm the trial court's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} On October 6, 2016, Smith filed a complaint in the trial court alleging the following facts. In December 2011, representatives from Nationwide recruited Smith to join

its Agency Capital Builder ("ACB") program, in which he was to receive the training and guidance necessary to one day open his own insurance agency. Nationwide's representatives told Smith that agents who completed the ACB program earned an annual salary of approximately $400,000, with established books of business valued at around $5 million. Relying on these representations, Smith resigned from his employment and signed the ACB agreement. He did not receive a copy of the agreement from Nationwide until three months after signing it. (Oct. 6, 2016 Compl. at ¶ 1, 5-14.)

{¶ 3} The ACB agreement stated that it terminated 26 months after being signed. However, a participant who met certain sales and premium quotas before its termination would be eligible to participate in a "Successor Program" and receive a $25,000 bonus to use towards opening an agency. (Compl. at ¶ 17.) The agreement also stated that Smith would receive marketing and sales training during the first three months of the program. Smith alleged that he did not receive any such training. (Compl. at ¶ 19.)

{¶ 4} Smith alleged that Nationwide took a number of actions that interfered with his ability to succeed in the program. According to Smith, Nationwide "failed and refused to provide [him] with any training or guidance;" forced him to "stop selling insurance" and instead work on a business plan for his agency; and fired his sales manager, forcing him to work without one for over four months before assigning him to a new one with "no experience managing" agents. (Compl. at ¶ 20, 23 & 26.) Smith blamed Nationwide's actions for his inability to finish the ACB program within the time period required to qualify for a bonus. (Compl. at ¶ 27.)

{¶ 5} Smith also alleged that after promising to do so, Nationwide refused to sell him an "established" book of business, and instead pushed him to buy two "small, distressed" books of business that had been serviced by unsuccessful members of the ACB program. (Compl. at ¶ 28.) According to Smith, Nationwide vastly overinflated the value of those books and, in reliance on those representations, he took out a loan to purchase them. Smith also asserted that "established books of business" were actually available, but that "Nationwide refused to offer" them to him because they were comprised of Caucasian policyholders and he was an African-American. (Compl. at ¶ 29.) Instead, Nationwide steered him to "focus" on minority communities. *Id.*

{¶ 6} On April 2, 2014, Nationwide sent Smith an agreement to memorialize his status as an insurance agent and the servicing of the books of business he purchased. The agreement was captioned "Advantage Program Independent Contractor/Exclusive Agent Master Agreement" (hereinafter "Advantage Agreement"). (Compl. at ¶ 34.) Smith alleges that he was told to electronically sign the Advantage Agreement the day it was sent, and that he was unable to print or download a copy of it because those features were "disabled." *Id.* Smith asked Nationwide for a copy "to discuss with an attorney prior to signing it," but the request was denied. (Compl. at ¶ 36.) Instead, Smith was told that if "he did not sign it, he would not own his business" and would be "terminated." *Id.* Fearing that he would lose the business he had grown during the ACB program, Smith signed the Advantage Agreement. He did not receive a copy of the 77-page agreement until "several months later," and alleged that he did not even know if the agreement that Nationwide eventually provided was the same document he signed. (Compl. at ¶ 39.)

{¶ 7} The Advantage Agreement contained performance goals based on a book of business with a value of approximately $725,000. It also required Smith to obtain his Series 6 and Series 63 licenses within six months, although Smith alleged that he was not informed of this requirement before leaving his pre-Nationwide employment. The Advantage Agreement characterized Smith as an independent contractor, but Nationwide controlled all aspects of his agency's business. According to Smith, Nationwide did not provide him with a full list of the policyholders in the books of business that he had purchased until over three months after signing the Advantage Agreement. During this time, he learned that over a quarter of the policies had been canceled or were being serviced by other agents. In addition, Smith failed to obtain the licensure required by the Advantage Agreement because he was working 60-70 hours per week to meet the agreement's performance goals. Smith alleged that Nationwide discriminated against him based on his race by providing similarly-situated Caucasian agents with books valued at $3 million or more, training, and guidance, and did not require them to obtain Series 6 or Series 63 licensure. (Compl. at ¶ 40-52.)

{¶ 8} Smith alleges that on February 27, 2015, Nationwide terminated his "employment" and rescinded his books of business without compensating him for it. Smith filed suit against Nationwide on October 6, 2016. (Compl. at ¶ 54.) Based on the foregoing allegations, his complaint stated claims against Nationwide for fraudulent inducement,

breach of contract, unjust enrichment, promissory estoppel, and race discrimination. (Compl. at ¶ 55-114.)

{¶ 9} Citing the Advantage Agreement's arbitration clause, Nationwide filed a motion in the trial court on November 11, 2016 to dismiss, or, in the alternative, stay the proceedings pending arbitration under R.C. 2711.02. Smith opposed the motion, arguing that it was procedurally and substantively unconscionable, procured by fraud, and that Nationwide had breached the Advantage Agreement.

{¶ 10} The trial court sustained Nationwide's motion and stayed Smith's lawsuit pending arbitration, citing the stay issued in another case between Nationwide and a former agent based on an "identical" arbitration clause. (Jan. 6, 2017 Entry.)

{¶ 11} Smith appealed and asserts the following assignments of error:

> I. The trial court erred in staying this matter pending arbitration because the arbitration clause is both procedurally and substantively unconscionable.
>
> II. The trial court erred in staying this matter pending arbitration because the arbitration clause was procured by fraud.
>
> III. The trial court erred in staying this matter pending arbitration because the arbitration clause is unenforceable as the contract in which it is contained was materially breached.

## II. STANDARD OF REVIEW

{¶ 12} An abuse of discretion standard applies to appellate review of a trial court's decision to stay or dismiss proceedings in favor of arbitration. *White v. Equity, Inc.*, 191 Ohio App.3d 141, 2010-Ohio-4743 (10th Dist.). However, "the proper standard of review of a determination of whether the arbitration agreement is enforceable in light of a claim of unconscionability is de novo, but any factual findings of the trial court must be accorded appropriate deference." *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶ 2.

## III. FIRST ASSIGNMENT OF ERROR

{¶ 13} Smith's first assignment of error asserts that the trial court erred when it granted Nationwide's motion for a stay because the arbitration clause in the Advantage Agreement is both procedurally and substantively unconscionable. Smith points to

language in the agreement that gives Nationwide the right to change or alter the rules of arbitration at any time and the "loser pays" provision to demonstrate both procedural and substantive unconscionability. He also argues that the arbitration clause is procedurally unconscionable because there was no meeting of the minds when he signed the agreement, based on his assertion that the essential terms pertaining to the cost of arbitration were unknown to him and that he "did not know what arbitration was" at the time. (Appellant's Brief at 22.)

{¶ 14} In response, Nationwide argues that neither the provisions that Smith points to nor any undisclosed costs of arbitration demonstrate procedural unconscionability. Nationwide also points to a login record that contradicts Smith's assertions regarding the limited timeframe allowed to view the agreement and describes him as a "sophisticated business owner" who was not in an inferior bargaining position. (Appellee's Brief at 29.)

{¶ 15} Under R.C. 2711.02(B), a court must stay any proceedings in which an "issue involved in the action is referable to arbitration under an agreement in writing for arbitration" upon application by one of the parties. Courts recognize that "[a] presumption favoring arbitration arises when the claim in dispute falls within the scope of the arbitration provision." *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471 (1998). "An arbitration clause in a contract is generally viewed as an expression that the parties agree to arbitrate disagreements within the scope of the arbitration clause, and, with limited exceptions, an arbitration clause is to be upheld just as any other provision in a contract should be respected." *Id.*

{¶ 16} One such exception to enforcement of an arbitration clause is unconscionability, due to the fact that it is "ground for revocation of a contract." *Taylor Bldg. Corp.* at ¶ 32. "A party raising the issue of unconscionability must demonstrate both procedural and substantive unconscionability." *Davis v. Beggs*, 10th Dist. No. 08AP-432, 2008-Ohio-6311, ¶ 12, citing *Taylor Bldg. Corp.* at ¶ 33.

{¶ 17} The relevant provisions of the Advantage Agreement read as follows:

> **All Controversies and Disputes Between the Parties Subject to Mandatory Binding Arbitration**. Without affecting Nationwide's rights under Section 30(E) of this Agreement, any controversy, claim or dispute between Agent and Nationwide, including, but not limited to, any claims arising out of or relating to any aspect of the parties'

relationship, before, during or after the cancellation of the Agreement, whether based upon contract, tort, statute, fraud, misrepresentation or any other legal theory, shall be adjudicated on an individualized agent by agent basis and not on a class or representative basis by mandatory binding arbitration pursuant to the Arbitration Procedures for Nationwide Agents (the "Arbitration Procedures") and those Nationwide Arbitration Rules (the "Nationwide Arbitration Rules") set forth on [the] Agent Gateway or such other place designated by Nationwide and accessible to Agent. Agent may obtain a copy of the Arbitration Procedures and the Nationwide Arbitration Rules from Nationwide at any time by submitting a written request to Agent's regional sales management or agtdisp@nationwide.com. Nationwide shall have the right to change, alter, amend or otherwise modify such Arbitration Procedures and/or the Nationwide Arbitration Rules at any time and from time to time and Agent acknowledges and agrees that any such change, alteration, amendment or limitation shall become effective on the date published by Nationwide.

* * *

**Attorneys' Fees**. In the event that Nationwide is successful in any arbitration, suit or proceeding brought or instituted to enforce any of the provisions of this Agreement or any Sub-Agreement, or on account of any damages sustained by Nationwide by reason of a violation of the terms or provisions of this Agreement or any Sub-Agreement, Agent agrees to pay to Nationwide all reasonable attorneys' fees and expenses incurred in the prosecution or defense of such action or proceeding, unless prohibited or limited by applicable law.

(Oct. 6, 2016 Compl., Ex. 2 at ¶ 35-36.)

{¶ 18} We first consider Smith's arguments concerning procedural unconscionability, guided by the following principles:

In determining whether an arbitration provision is procedurally unconscionable, courts consider the circumstances surrounding the contracting parties' bargaining, such as the parties' age, education, intelligence, and business acumen and experience. Additional considerations include who drafted the contract, whether alterations to the contract were possible, whether the terms were explained to the weaker party, and whether the party challenging the provision was represented by counsel. The crucial question is whether each

> party to the contract had a reasonable opportunity to understand the terms of the contract.

(Citations omitted.) *Tami Shearer, DVM v. VCA Antech, Inc.*, 10th Dist. No. 11AP-44, 2011-Ohio-5171, ¶ 24.

{¶ 19} As an initial matter, we consider Smith's contention that several portions of the arbitration provision are "*both* procedurally and substantively unconscionable." (Emphasis sic.) (Appellant's Brief at 17.) Smith first points to the provision allowing Nationwide "the right to change, alter, amend or otherwise modify [the] Arbitration Procedures and/or the Nationwide Arbitration Rules at any time." *Id.* Citing *Arnold v. Burger King*, 8th Dist. No. 101465, 2015-Ohio-4485, Smith argues that this provision is procedurally unconscionable because it allowed Nationwide to make alterations to the contract. *Id.*

{¶ 20} However, *Arnold* held only that a similar provision was substantively unconscionable. *Id.* at ¶ 97 & 104 (finding an arbitration provision substantively unconscionable where an employee "would not, at the time of signing, be able to identify the applicable rules and regulations or know what terms and conditions applied if an arbitration was filed since the rules could be revised at any time without notice"). In a footnoted observation, the Eighth District Court of Appeals stated that the provision "may also be considered [to possess] an element of procedural unconscionability as it involves the acquiescence to future, unknown, and uncontrollable terms, subject to change without notice at any time." *Id.* at ¶ 97, fn. 10. We respectfully disagree with this characterization. Procedural unconscionability concerns "whether alterations to the contract were possible" during the formation of the contract containing the arbitration provision. *Tami Shearer, DVM* at ¶ 24. *See also Corl v. Thomas & King*, 10th Dist. No. 05AP-1128, 2006-Ohio-2956, ¶ 31 (noting that, unlike substantive unconscionability, "procedural unconscionability concerns the formation of the agreement"). In contrast, "the right to change, alter, amend or otherwise modify [the] Arbitration Procedures and/or the Nationwide Arbitration Rules at any time" is a substantive right that Nationwide may invoke during future dispute-resolution proceedings between the parties, not one that it could invoke during the formation of the Advantage Agreement. Accordingly, this provision does not support Smith's argument for procedural unconscionability.

{¶ 21} Smith also argues that the attorneys' fee provision is both procedurally and substantively unconscionable. However, in both cases cited to support this argument, the provisions were found to be procedurally unconscionable because of the circumstances surrounding the formation of the contracts, and the "loser pay" provisions were evidence only of substantive unconscionability. *DeVito v. Autos Direct Online, Inc.*, 8th Dist. No. 100831, 2015-Ohio-3336, ¶ 32 (en banc) (finding a "loser-pay provision" in consumer contract procedurally unconscionable because it was "adhesive," with "little meaningful, face-to-face opportunity for understanding, negotiating, or altering the terms"); *Small v. HCF of Perrysburg, Inc.*, 159 Ohio App.3d 66, 2004-Ohio-5757, ¶ 28 (6th Dist.) (finding procedural unconscionability where a provision was signed by a widow at the insistence of a nursing care center where her husband sustained injuries leading to his death, as she signed while "under a great deal of stress" with no explanation of the agreement or opportunity to consult an attorney). In both cases, procedural unconscionability did not arise from the fee-shifting character of the provision. Again, this is a substantive right that is not evidence of procedural unconscionability.

{¶ 22} Smith also argues that the arbitration provision is procedurally unconscionable because it "is devoid of any information pertaining to the cost of arbitration," which he believes is an essential term required for the parties to reach a meeting of the minds. (Appellant's Brief at 21.) Smith cites his affidavit, in which he states: "At the time I signed the Advantage Agreement, Nationwide did not provide me with a description of the cost of arbitration, and I did not know that there would be a cost." (Nov. 21, 2016 Pl.'s Memo. Contra Def.'s Mot. to Dismiss or Stay Pending Arbitration, Ex. 1 at ¶ 12.)

{¶ 23} In *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000), the United States Supreme Court held that where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." Without any record demonstrating how the party resisting arbitration would be "saddled with prohibitive costs," the mere fact that there were undisclosed costs "is too speculative to justify the invalidation of an arbitration agreement." *Id.* at 91. Here, as well, Smith points to no data in the record concerning costs. Furthermore, Smith does not contend that he would not

have entered into the agreement if the cost of arbitration had been known to him at the time he signed it. *See Corl* at ¶ 33 (rejecting costs as evidence of unconscionability where appellant cited only the filing fee, and no other evidence "that the costs of arbitration would be so substantial as to deter her from bringing her claim or that arbitration is an unreasonable alternative to litigation in a judicial forum"). For these reasons, Smith's assertion that this term was unknown to him is insufficient to demonstrate that he and Nationwide failed to reach a meeting of the minds.

{¶ 24} Smith also points to the "difference in bargaining power" between himself and Nationwide, which he characterizes as "quite stark." (Appellant's Brief at 22.) Smith claims that he had only two options when presented with the Advantage Agreement: sign it or "be terminated and forfeit the book of business" he had built. *Id.* He also claims that he "did not know what arbitration was at the time he signed the Advantage Agreement." *Id.*

{¶ 25} Undoubtedly, some difference in bargaining power between Smith and Nationwide exists. However, Smith does not argue that the Advantage Agreement is a contract of adhesion.[1] Nor is it a consumer contract, which "necessarily engenders more reservations than an arbitration clause in a different setting, such as in a collective bargaining agreement, a commercial contract between two businesses, or a brokerage agreement." *Williams* at 472. The Advantage Agreement is more akin to a commercial contract, as its purpose is to create an insurance agency business for the independent contractor. (Oct. 6, 2016 Compl., Ex. 2 at 1.) Furthermore, Smith had previously contracted with Nationwide when he entered into the ACB program. He worked with Nationwide for over two years before it presented him with the offer to enter the Advantage Program and become an independent agent. Given this familiarity with Nationwide and Smith's "business acumen and experience" in dealing with the company, we cannot conclude that the difference in bargaining power between the parties was great enough to support a finding of procedural unconscionability. *Tami Shearer, DVM* at ¶ 24.

---

[1] Smith's reply brief asserts that the Advantage Agreement has a "one-sided, adhesive nature," and suggests for the first time that it is one of adhesion. (Reply Brief at 18.) An appellant may not raise a new argument in a reply for the first time. *In re Fuel Adjustment Clauses for Columbus S. Power Co.*, 140 Ohio St.3d 352, 2014-Ohio-3764, ¶ 37.

{¶ 26} In his final argument addressing procedural unconscionability, Smith asserts that Nationwide presented him with the 70-page Advantage Agreement on April 2, 2014 and told him he had to sign it the same day. (Appellant's Brief at 23.) In response, Nationwide cites to an exhibit it presented in the trial court of a time-stamped log showing that Smith was sent an invitation to view the documents on March 28, 2014, but did not view them until April 2, 2014. On that day, he viewed them in the late morning, then again nine hours later before signing them. (Appellee's Brief at 26-28.) In reply, Smith asserts that his "recollection is different" than the log and points to his inability to print the documents out. (Reply Brief at 12.)

{¶ 27} Regardless of whether Smith was able to physically print out the documents, he had five days to review the contents of the Advantage Agreement, as well as all of the arbitration rules and procedures. "A party entering a contract has a responsibility to learn the terms of the contract prior to agreeing to its terms." *Estate of Brewer v. Dowell & Jones, Inc.*, 8th Dist. No. 80563, 2002-Ohio-3440, ¶ 13. While these circumstances were perhaps not ideal, they do not amount to a level of procedural unconscionability that would justify not enforcing the arbitration clause that Smith had the opportunity to read and understand before signing it. Accordingly, we reject the argument that the circumstances of the formation of the arbitration clause in the Advantage Agreement were procedurally unconscionable.

{¶ 28} Because Smith cannot demonstrate that the arbitration clause was procedurally unconscionable, we need not address the issue of substantive unconscionability, as he must show both to demonstrate the overall unconscionability of the clause. *Taylor Bldg. Corp.* at ¶ 33. "The failure to demonstrate either type of unconscionability alleviates the need to address the other." *Tami Shearer, DVM* at ¶ 29. *See also Taylor Bldg. Corp.* at ¶ 52 (stating that "[t]he conclusion that the arbitration clause here is not procedurally unconscionable defeats the [plaintiffs'] contention that the arbitration clause is unenforceable due to unconscionability"). Because the arbitration clause in the Advantage Agreement was not unconscionable, the trial court did not err by granting Nationwide's request for a stay pending arbitration. Accordingly, the first assignment of error is overruled.

## IV. SECOND ASSIGNMENT OF ERROR

{¶ 29} In his second assignment of error, Smith argues that the trial court erred by granting the stay pending arbitration because the Advantage Agreement was procured by fraud. Because a court must determine that a contract is valid and enforceable before sending it to arbitration, Smith argues that the trial court erred by not analyzing his allegations of fraud. (Appellant's Brief at 27-28.)

{¶ 30} "To defeat a motion for stay brought pursuant to R.C. 2711.02 a party must demonstrate that the arbitration provision itself in the contract at issue, and not merely the contract in general, was fraudulently induced." *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498 (1998), syllabus. "Because the arbitration clause is a separate entity, an alleged failure of the contract in which it is contained does not affect the arbitration provision itself." *Battle v. Bill Swad Chevrolet*, 140 Ohio App.3d 185, 189 (10th Dist.2000), citing *ABM Farms, Inc.* We have previously held that "it is unavailing for a party to argue that 'an R.C. 2711.02 motion for stay can be defeated by an assertion that the contract in general was fraudulently induced and by requesting rescission thereof.' " *Gordon v. OM Fin. Life Ins. Co.*, 10th Dist. No. 08AP-480, 2009-Ohio-814, ¶ 9, quoting *Battle* at 190.

{¶ 31} As set forth in the complaint, Smith's fraud allegations only concern the Advantage Agreement as a whole, not the arbitration provision. He alleges that the Advantage Agreement as a whole "was procured by fraud." (Compl. at ¶ 56.) In count one, where Smith details his fraud claim, he alleges that Nationwide made multiple false representations to induce him to join the ACB program and the Advantage Program and to sign the agreements, including misrepresenting the value of the book of business he was required to buy, his responsibilities under the Advantage Agreement, and his potential income from participating in the program. (Compl. at ¶ 59-68.) However, the fraud allegations do not even mention the arbitration agreement. Under *ABM Farms, Inc.* and *Battle*, these allegations do not defeat the validity of the arbitration provision in the Advantage Agreement. Accordingly, the trial court did not err by granting the stay pending arbitration, and the second assignment of error is overruled.

## V. Third Assignment of Error

{¶ 32} In Smith's third assignment of error, he argues that the trial court should not have granted a stay pending arbitration because Nationwide's breach of the Advantage

Agreement rendered it unenforceable. Citing *Waste Mgt., Inc. v. Danis Indus. Corp.*, 257 F.Supp.2d 1076 (S.D.Ohio 2003) and *Midwest Payment Sys., Inc. v. Citibank Fed. Savs. Bank*, 801 F.Supp. 9 (S.D.Ohio 1992), Smith claims that he is not bound by the arbitration provision because Nationwide materially breached the Advantage Agreement by failing to comply with a number of its obligations under the contract. (Compl. at ¶ 28-30.)

{¶ 33} Neither *Waste Mgt.* nor *Midwest Payment Sys., Inc.* addressed a dispute over the arbitrability of a contract or the enforcement of an arbitration provision. Both cases concerned contract disputes resolved by trial courts on summary judgment. No party sought or resisted arbitration in either case. *Waste Mgt.* at 1088-89 (sustaining in part and overruling in part a motion for partial summary judgment, ruling that the defendant materially breached its obligation to indemnify the plaintiff for any liability arising from sale of a landfill); *Midwest Payment Sys., Inc.* at 13 (ruling that the defendant repudiated a contract between a bank it had acquired and the plaintiff by transferring data processing services to another vendor). Neither case supports Smith's argument, which assumes that a trial court must make a factual finding concerning a party's allegation of breach before issuing a stay for the arbitration of their dispute. Simply put, litigating the issue of breach to determine an agreement's arbitrability would defeat the purpose of arbitration, which is "to avoid needless and expensive litigation." *Springfield v. Walker*, 42 Ohio St. 543, 546 (1885).

{¶ 34} The allegation that Nationwide materially breached the Advantage Agreement is a "controversy, claim or dispute between [Smith] and Nationwide * * * based upon contract" that must "be adjudicated * * * by mandatory binding arbitration," not by the trial court. (Oct. 6, 2016 Compl., Ex. 2 at ¶ 35.) Smith is free to argue in arbitration that a proposition of contract law set forth in *Waste Mgt.* or *Midwest Payment Sys., Inc.* controls, and he may urge the arbitrator to apply the principle to the parties' dispute. However, the trial court did not err by declining to do so. Accordingly, the third assignment of error is overruled.

## VI. CONCLUSION

{¶ 35} Based on our de novo review of the arbitration clause in the parties' agreement, we conclude that it was not unconscionable. Furthermore, Smith's claims of fraud and material breach of the agreement do not defeat Nationwide's right to have the

arbitration clause enforced. For these reasons, the trial court did not abuse its discretion when it granted Nationwide's motion to stay pending arbitration and refer Smith's claims to arbitration. Accordingly, Smith's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

KLATT and DORRIAN, JJ., concur.

————————————